

**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Provider Reimbursement Review Board
7500 Security Blvd.
Mail Stop: B1-01-31
Baltimore, MD 21244
410-786-2671

**Via Electronic Delivery**

Elizabeth Elias, Esq.
Hall, Render, Killian, Heath & Lyman, P.C.
500 N. Meridian St., Ste. 400
Indianapolis, IN 46204

RE: *Notice of Dismissal – Updated Rationale*
Hall Render Standardized Amount CIRP Group Cases
Case Nos. 18-1646G (*see* **Appendix A** listing 502 CIRP & optional group cases)

Dear Ms. Elias:

The Provider Reimbursement Review Board ("Board") has reviewed the appeal requests filed by the Providers in the five hundred and two (502) above-referenced group cases set forth in **Appendix A** relating to the standardized amounts used in federal rates for the inpatient prospective payment system ("IPPS") during federal fiscal year ("FFY") 1984, the initial year of IPPS. The Medicare Contractor has filed Jurisdictional Challenges in each of these group cases. The Providers' Representative filed responses to these challenges. As set forth below, the Board Majority has determined that, consistent with 42 U.S.C. §§ 1395ww(d)(7) and 1395oo(g)(2) and 42 C.F.R. § 405.1840(b), it lacks substantive jurisdiction over the appealed issue and, therefore, is dismissing these group cases in their entirety. This issue is not new to the Board and this determination is consistent with the its prior dismissal determinations in other cases involving the same issue where the Board found no *substantive* jurisdiction;[1] however, in response to the additional briefing on this issue by other parties, the Board's decision has been updated to clarify and confirm that the federal rates for FFY 1986 and subsequent FFYs used the FFY 1985 budget-neutrality-adjusted federal rates.

In summary, the Board Majority finds that it lacks substantive jurisdiction over the issue raised in these group appeals because the standardized amounts used for IPPS rates for FFYs 1984 and FFY 1985 are each based on the budget neutrality adjustment ("BNA") made for that FFY and the 1984 and 1985 BNAs are presumably designed to be corrective of the initial base rate that was set *using 1981 data.*[2] Therefore, the *final* FFY 1984 and 1985 standardized amounts are *inextricably*

---

[1] Prior Board dismissal determinations of the issue in the instant group appeals include but are not limited to: Board dec. dated Apr. 6, 2023 (lead Case No. 19-0233GC); Board dec. dated Dec. 14, 2023 (lead Case No. 23-0695GC); Board dec. dated Jan. 23, 2024 (lead Case No. 19-1094GC); Board dec. dated Jan. 24, 2024 (lead Case No. 23-1522GC); and Board dec. dated Jan. 31, 2024 (lead Case No. 19-0847GC). These jurisdictional decisions are posted on the Board's website, by the relevant year and month, at https://www.cms.gov/medicare/regulations-guidance/provider-reimbursement-review-board/list-prrb-jurisdictional-decisions.

[2] The Board Majority has included at **Appendix B** examples of other adjustments to the standardized amounts that have occurred outside of the FFY 1984 and 1985 BNAs. These intervening adjustments for FFYs 1986 and 2018 include

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 2

*intertwined* with those applicable BNAs.[3]  Indeed, the standardized amounts were too high for FFYs 1984 and 1985 and the BNAs applied to those years reduced the standardized amounts (by factors of approximately 0.03 for FFY 1984 and 0.05 for FFY 1985) and, thus, these BNAs appear to have already automatically accounted for any such alleged errors in setting the initial base rate (which again was based on 1981 data).[4]  Because the FFY 1985 budget-neutrality-adjusted rate was used/flowed forward for determining FFY 1986 rates and the rates for subsequent FFYs and because 42 U.S.C. § 1395ww(d)(7) prohibits administrative or judicial review of the FFY 1984 and 1985 BNAs, the Board Majority finds that it may not review the standardized amount used for the FFYs appealed as it relates to the common issues in these appeals.  In this regard, the Board Majority again notes that the rates for FFY 1986 and subsequent years are based on the FFY 1985 budget -neutrality-adjusted rates.  Accordingly, the Providers assertion that the initial FFY 1984 standardized amount continues to serve as the base for all future calculations is incorrect as causal link is broken.  Specifically, they may not simply pass through, or over, the BNAs for FFYs 1984 and 1985, *for purposes of future FFYs*,[5] because those adjustments are tied to an absolute *external* event (the Secretary's estimate, based on the best available data, of what would have been paid for those years if there were no IPPS) ***and*** were ***fixed*** (no greater *and* no less than what would have been paid had there been no IPPS).  To do otherwise, would impact the very integrity of IPPS.[6]

The Board Majority also notes that the Provider raises new legal issues that are beyond the scope of the original group issue statement in these group cases.  Per their group issue statements, these group appeals challenge the standardized amount established for the ***initial*** year of IPPS, namely FFY 1984 running from October 1, 1983 to September 30, 1984.  More specifically, the group issue statements alleged that "the Secretary[] fail[ed] to remove transfer cases ***from his initial*** *calculation* of the standardized amount in 1983"[7] as set forth at 42 U.S.C. § 1395ww(d)(2)(A).[8]  Pursuant to 42 C.F.R. §§ 405.1837(a)(2) and (f)(1), a group may contain only one issue and no issues may be added to the group appeal.  In their Response to the Medicare Contractor's Jurisdictional Challenge, the Providers have ***improperly*** raised new legal issues that are not part of this appeal.  Specifically, the Providers have challenged the FFY 1986 standardized amount rates and subsequent years as being *improperly* based on the FFY 1985 budget-neutrality adjusted rates.  This is a newly-added issue and is ***dismissed*** from these appeals pursuant to 42 C.F.R. §§ 405.1837(a)(2), (c) and (f)(1).

---

both mandatory and discretionary revisions ***to the standardized amounts*** (as well as the Congress' decisions to revise or not revise the "applicable percentage increases" for FFYs 1986 and forward as provided in 42 U.S.C. § 1395ww(b)(3)(B)(i)) and highlight the complexity of the issue before the Board, particularly where such adjustments were made in a budget neutral manner or were based on factoring in certain other estimated impacts

[3] *See infra* note 64 (citing to decisions that discuss similar circumstances involving Medicare provisions found to be inextricably tied to certain other provisions for which Congress precluded administrative and judicial review).

[4] *See infra* note 45 (discussing how the removal of nurse anesthetists costs were removed from IPPS and how that removal was *automatically* accounted for as part of the 1985 BNA).

[5] *See also supra* note 2 outlining additional intervening adjustments that could be adversely impacted by the relief being sought by the Providers, thereby raising other similar IPPS integrity concerns.

[6] *See also supra* note 2 outlining additional intervening adjustments that could be adversely impacted by the relief being sought by the Providers, thereby raising other similar IPPS integrity concerns that could potentially serve as an alternative rationale.

[7] *E.g.*, group issue statement for Case No. 18-1646.

[8] *See also* Providers' Response to the Medicare Contractors' Jurisdictional Challenge at 5-6 (describing the Secretary's interpretation of the "simple formula" at 42 U.S.C. § 1395ww(d)(2)(A) as the genesis of the Providers' dispute).

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 3

Finally, as a side note, the Board Majority notes that the Providers' claims that the 1981 data has not been available to the provider community is not correct. In addition to the FOIA process recognized in the Providers' Response to the Medicare Contractors' Jurisdictional Challenge, the Secretary has not produced certain 1981 cost report data that was used to determine the base year amount. The Board Majority notes that this information that the information sought by the Providers appears to have been available to the public roughly 25 years ago (close in time to when the initial IPPS was established), as explained in the proposed rule issued on May 27, 1988:

> *B. Public Requests for Data*
>
> In order to respond promptly to public requests for data related to the prospective payment system, we have set up a process under which commenters can gain access to the raw data on an expedited basis. Generally, the data are available in computer tape format and are listed below with the cost of each tape. Anyone wishing to purchase data tapes should submit a written request along with a check to cover the cost of the tapes to the following address: HCFA Office of Statistics and Data Management, Bureau of Data Management and Strategy, Room l-F-2 Oak Meadows Building, 6325 Security Boulevard, Baltimore, MD 21207.
>
> ****
>
> **4. H180 Extract, Cost Reporting Periods Ending January 1, 1981 through December 31, 1981**
>
> This file contains selected data items from cost reports. **These data were used in computing the initial Federal prospective payment rate**.
>
> Price: $530.00[9]

---

[9] 53 Fed. Reg. 19498, 19526 (May 27, 1988). Apparently, the Secretary made the data available in this manner due to demand, as previously the Secretary made this information available through FOIA as discussed in the following excerpt from the January 3, 1984 Final Rule:

> *We agree hospitals should have access to the data used in connection with the development of the prospective payment system.* We would like to point out that public access to disclosable information is provided under the Freedom of Information Act (5 U.S.C. 552). While we cannot guarantee that all requested information will be disclosed in the format desired by the requester, we will continue to respond promptly to all information requests and provide all available data to assist the hospital industry and other interested parties in the evaluation of the prospective payment system.
>
> In fact, much of the applicable data has already been made available to requesters. For example, the cost report file used as a basis for determining the budget neutrality adjustment factor and other factors had already been made available for public use before publication of the interim rule. This data, together with our descriptions of the budget neutrality determination published in

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 4

Prior to May 1988, it appears as if this information was available through FOIA as recognized by the Providers.[10]  However, the Providers do not recognize that the above information was previously available beginning in May 1988.

## PROCEDURAL BACKGROUND:

### A. Group Issue – Limited to Alleged Error in the Initial Calculation of the Standardized Amount for the Initial Year of IPPS

Hall, Render, Killian, Heath & Lyman, P.C. ("Providers' Representative") represents a number of providers in common issue related party ("CIRP") and optional groups which are challenging the IPPS standardized amount.  Various Medicare Contractors filed Jurisdictional Challenges covering the 502 group cases over the past year or so, as described in **Appendix A**.[11]  In the majority of these cases, Hall Render requested postponements for their jurisdictional response deadlines, which the Board granted, extending the deadline to respond until May 2024.  In other cases with more recent challenges, Hall Render filed the response vs. requesting another postponement. The group issue statements are materially identical and can be considered together.

The group issue statement presented is, in part:

> Providers request a group appeal hearing in accordance with 42 C.F.R. §§ 405.1835 and 405.1837 to challenge the federal standardized amount(s) ("Standardized Amount") established under the Medicare Inpatient Prospective Payment System (IPPS) for federal fiscal year ("FFY") 1983 as improper.  **The 1983 error reduces the FFY 2024 Standardized Amount,** and will reduce each subsequent fiscal year's Standardized Amount until this challenge is resolved. On August 28, 2023, the Secretary of the U.S. Department of Health and Human Services, Centers for Medicare & Medicaid Services ("Secretary") published a Standardized Amount for FFY 2024 that contains an approximately negative 0.9% understatement **due to the Secretary's failure to remove transfer cases from his initial calculation of the standardized Amount in 1983**, an error that continues to this day. 88 Fed. Reg. 58640, 59030-59037 (August 28, 2023). It has been long recognized that the Board has jurisdiction over an appeal timely filed from a Federal Register promulgation. See *Washington Hospital Center v.*

---

section VIII of the Addendum to the interim rule, should allow our budget neutrality determination to be replicated.  49 Fed. Reg. at 251.

(Emphasis added.)  It is unclear to what extent any of this 1981 information continues to be available to the public at this late date and, if not, to what extent CMS is obligated to continue to make it available to the public at this late date. These questions could become relevant if the Board were to have jurisdiction and, following additional input from the parties, were to determine that material factual disputes exist, resulting in further record development by the parties.

[10] *See supra* note 9; Providers' Response to the Jurisdictional Challenge at 7.

[11] *See* **Appendix A**.

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 5

> *Bowen*, 795 F.2d 139 (D.C. Cir. 1986). The Secretary's error
> resulted in an understatement of the Standardized Amount, and
> consequently all Medicare IPPS payments to the Providers for the
> federal fiscal year at issue. The Secretary's error will result in an
> underpayment to hospitals in FFY 2024 of approximately $860
> million nationwide.[12]

Thus, the Providers challenge the federal standardized amount established under the IPPS for the
initial year as improper based on the allegation that "the Secretary[] fail[ed] to remove transfer
cases ***from his initial*** *calculation* of the standardized amount in 1983."[13]  In the Providers' group
appeal requests, they further explain that:

> When the Prospective Payment System was developed in 1983,
> transfers from one hospital to another should have not been
> counted as discharges from each respective hospital because of the
> special reimbursement rules created for transfers under the
> Prospective Payment System. *See* 48 Fed. Reg. 39,752, 39,759
> (Sept. 1, 1983) and 49 Fed. Reg. 234, 245-46 (Jan. 3, 1984).
> However, CMS (then HCFA) used 1981 cost report data to
> compute the initial standardized amount, and transfers were
> counted as two discharges rather than one because the cost report
> at that time did not separately quantify transfers. As a result, the
> additional discharges had the effect of understating the
> standardized amount. The agency attempted to downplay the effect
> of its decision: With respect to the Federal rates, *we would expect*
> *any discrepancy between the "old" and "new" definitions of*
> *discharge to have no significant effect on the rates*. 49 Fed. Reg.
> 234, 245-46 (Jan. 3, 1984). However, CMS declined then and
> continues to decline to quantify the exact effect of its decision, and
> it is the only entity in possession of this information.[14]

CMS opted to use 1981 as a "base year" to calculate these initial FFY 1984 rates, and thus data
was collected from hospitals' 1981 cost reports to determine average costs for each discharge
category.  The data was adjusted for inflation and standardized, but the Providers argue that the
initial calculation of this standardized amount continues to serve as the base for all future
calculations.  Since the Providers allege this initial calculation was understated, they argue that
the calculation for each subsequent year has also been understated.[15]

The Providers claim that the data sources used in collecting the 1981 data did not distinguish
between patients who were discharged from the hospital, and patients who were transferred to

---

[12] *E.g.*, Case 24-0998GC Issue Statement (bold and underline emphasis added).
[13] *Id.* (emphasis added).
[14] *Id.*
[15] *Id.*

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 6

another hospital or facility.  They state that CMS views transfers as distinct from discharges, but in calculating the average cost per discharge using the 1981 data, CMS erroneously included transfers in the total number of discharges.[16]

In each case, the Providers are challenging the applicable FFY IPPS rates as set forth in the Federal Register.[17]  They claim that the average cost per discharge as initially set should not have included transfers.  They also argue that hospitals have not been permitted to appeal the rate under CMS' improper interpretation of 42 C.F.R. 405.1885(a)(1).  They go on to argue:

> The Secretary acknowledged it committed this error [the inclusion of transfers] . . . The Secretary has also refused to correct it.  The Secretary's inclusion of transferred patients swelled the denominator and understated the cost-per-discharge ratio and was not authorized by law.[18]

### B.  Jurisdictional Challenges

The Medicare Contractor filed a challenge in the 502 different group cases, and the Providers failed to file a timely response in each.[19]  The Medicare Contractor argues that the merits of the appealed issue are illegitimate, but more importantly, that the Board lacks subject matter jurisdiction and need not even address the merits of the issue.  It references the Board's April 6, 2023 decision dismissing five (5) different CIRP group appeals concerning the same issue.  The Medicare Contractor argues the Board should apply the same rationale and find that 42 U.S.C. § 1395ww(d)(7)(A) precludes administrative review of the base year standardized amounts.  It also claims that BNAs after the base year amount was calculated have corrected any potential errors from prior years, and that the data shows the base year was, in fact, initially set too high (rather than understated).

### C.  Providers' Response to Jurisdictional Challenge

The Providers argue that they are appealing a "straightforward issue:"

> the Secretary's improper calculation of—and the MAC's continued use of—this understated standardized amount. Instead of determining "the allowable operating costs per discharge:"

**Allowable Operating Costs**
**Number of Discharges**

---

[16] *See id* at 5-6.
[17] *See e.g.,* Case 18-1646G, Providers' Preliminary Position Paper at 1.
[18] *Id.* at 1-2.
[19] *See* **Appendix A** for a complete list of challenges and cases impacted.  As previously noted, the challenges are all materially identical.

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 7

the Secretary divided "the allowable operating costs" by the
number of discharges **and** transfers:

$$\frac{\text{Allowable Operating Costs}}{\text{Number of Discharges} + \text{Number of Transfers}}[20]$$

The Providers go on to argue that the preclusion of FFY 1984 and 1985 Budget Neutrality
Adjustments (BNAs) are not "inextricably intertwined" with the average standardized amounts
because "Congress commanded the Secretary not to incorporate the FFY 1984 BNA into the FFY
1985 prospective payment rate; Congress likewise commanded the Secretary not to incorporate
the 1985 BNA into the FFY 1986 prospective payment rate."[21] Further, the Providers argue that
"no part of § 1395(d)(7)(A) precludes review of the Secretary's failure to meet Congress'
mandate to calculate each hospital's cost-per-discharge as the first step of finding the average
standardized amounts."[22]

The Providers also argue that "the Secretary further understated the average standardized amounts
by improperly including the FFY 1985 BNA in the FFY 1986 average standardized amounts" and
therefore, "Providers are limited in their ability to state exactly the amount of reimbursement in
dispute—given CMS and the Secretary have repeatedly refused requests to produce data used in
these calculations."[23]

**<u>BOARD DECISION</u>:**

As described more fully below, the Board Majority finds that it lacks substantive jurisdiction over
each of the 502 groups because: (1) the initial IPPS standardized amounts set for FFY 1984[24] are
***inextricably*** tied to the FFY 1984 and 1985 BNAs to the "applicable percentage increases" for
IPPS[25]; (2) the FFY 1985 budget neutrality-adjusted rates were used to determine the rates for FFY
1986 and, thus, became embedded into the rates determined for subsequent FFYs;[26] and (3)
42 U.S.C. § 1395ww(d)(7) prohibits administrative or judicial review of the FFY 1984 and 1985

---

[20] Jurisdictional Response in Case No. 18-1646G at 1.

[21] *Id*. at 2.

[22] *Id*.

[23] *Id*.

[24] The Board Majority notes that, initially, there was not just one standardized amount. Rather there were 20 average
standard amounts per discharge according to urban/rural designation in each of the nine census divisions and the
nation and each of these 20 rates is further divided into a labor and nonlabor portion. *See* 48 Fed. Reg. 39752, 39763
(Sept. 1, 1983).

[25] 42 U.S.C. § 1395ww(e) is entitled "Proportional adjustments in applicable percentage increases." The 1984 and
1985 BNAs are set forth in § 1395ww(e)(1)(B) which is cross-referenced for 1984 IPPS rates at § 1395ww(d)(2)(F)
and for 1985 IPPS rates at § 1395ww(d)(3)(C).

[26] *But see* **<u>Appendix B</u>**. The Board has not traced the standardized amount after FFY 1986 all the way up to the
each of the years in question. **<u>Appendix B</u>** highlights how, in addition to the use of the FFY 1985 budget-neutrality-
adjusted rates for FFY 1986 and forward, there could be other intervening statutory or regulatory events (whether
discretionary or mandatory) that could break the Providers' alleged causal link between the alleged error in the
initial FFY 1984 rates and the standardize amounts used in the years at issue.

Exhibit 1

BNAs.  Further, the fact that the Secretary's BNA to the FY 1984 Federal Rates was 0.970[27] demonstrates that, contrary to the Providers' assertions, the initial standardized amount was ***not*** understated but rather was *overstated* by a factor of 0.030 (*i.e.*, 1.000 – 0.970).

### A.  Statutory Background on IPPS and the Standardized Amount Used in IPPS Rates

Part A of the Medicare program covers "inpatient hospital services." Since October 1, 1983, the Medicare program has paid most hospitals for the operating costs of inpatient hospital services under the IPPS.[28]  Under IPPS, Medicare pays a prospectively-determined rate per eligible discharge, subject to certain payment adjustments.[29]

In order to implement IPPS, "the statute require[d] that the Secretary determine national and regional adjusted DRG prospective payment rates for each DRG to cover the operating costs of inpatient hospital services."[30]  The methodology for arriving at the appropriate rate structure is located at 42 U.S.C. § 1395ww(d)(2) and "requires that certain ***base period*** *cost data* be developed and modified in several specified ways (*i.e.*, inflated, standardized, grouped, and adjusted) resulting in 20 average standard amounts per discharge according to urban/rural designation in each of the nine census divisions and the nation."[31]  Section 1395ww(d)(2)(A) requires that the Secretary determine a "base period" operating cost per discharge using the most recent cost reporting period for which data are available:

> (II)  DETERMINING ALLOWABLE INDIVIDUAL HOSPITAL
> COSTS FOR BASE PERIOD.—The Secretary shall determine the
> allowable operating costs per discharge of inpatient hospital
> services for the hospital for the most recent cost reporting period
> for which data are available.

Consistent with these statutory provisions, the Secretary used Medicare hospital cost reports for reporting periods ending in 1981 and set the 1981 "base period" operating cost per discharge amount using the 1981 operating costs per discharge amount and then *updated* by an inflationary factor to bring it forward to FFY 1984.[32]  The Providers dispute how the Secretary determined "discharges" and allege that the Secretary improperly treated transfers as discharges for purposes of this calculation.

The Secretary then "standardized" the FFY 1984 base period operating cost per discharge using the process prescribed at 42 U.S.C. § 1395ww(d)(2)(c).  The standardization process removed the effects of certain variable costs from the cost data, including (but not limited to) excluding

---

[27] In the final rule published on January 3, 1984, the Secretary revised the Federal BNA factor to 0.970. 49 Fed. Reg. 234, 334 (Jan. 3, 1984).

[28] *See* 42 U.S.C. § 1395ww(d)(l)-(5); 42 C.F.R. Part 412.

[29] *Id.*

[30] 48 Fed. Reg. 39752, 39763 (Sept. 1, 1983).

[31] *Id.* (emphasis added).

[32] *Id*. at 39763-64.

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 9

costs associated with indirect medical education costs, adjusting for variations in average hospital wage levels, and adjusting for variations in case mix among hospitals.

The initial standardized amounts have been annually adjusted and/or updated.  However, contrary to the characterization in the D.C. Circuit's 2011 decision in *Saint Francis Med. Ctr. v. Azar* ("*Saint Francis*"), the standardized amount is not adjusted each year simply for inflation.[33]  Significantly, some of these annual adjustments were required to be *budget neutral* and are not subject to administrative review and others are discretionary (*see also* **Appendix B**).  In particular, 42 U.S.C. § 1395ww(e)(1)(B) provides the BNA for "the applicable percentage increases" to the standardized amounts for 1984 and 1985 and states, in pertinent part:

> **(e) Proportional adjustments in _applicable percentage increases_**
>
> (1) . . . .
>
> (B) For discharges occurring in fiscal year 1984 or fiscal year 1985, the Secretary shall provide under subsections (d)(2)(F) and (d)(3)(C) for such equal proportional adjustment _in each of the average standardized amounts_ otherwise computed for that fiscal year as may be necessary to assure that—
>
>> (i)  the aggregate payment amounts otherwise provided under subsection (d)(1)(A)(i)(II) and (d)(5) for that fiscal year for operating costs of inpatient hospital services of hospitals (excluding payments made under section 1395cc(a)(1)(F) of this title),
>
> _are not greater or less than_—
>
>> (ii) the DRG percentage (as defined in subsection (d)(1)(C)) of *the payment amounts which would have been payable for such services* for those same hospitals for that fiscal year under this section *under the law as in effect _before April 20, 1983_* (excluding payments made under section 1395cc(a)(1)(F) of this title).[34]

The Secretary implemented the above budget neutrality provisions at 42 C.F.R. §§ 412.62(i) and 412.63(v) for the 1984 rate year and 1985 rate year respectively.  Specifically, § 412.62(i) provides the following instruction for maintaining budget neutrality for the 1984 Federal IPPS rates:

---

[33] 894 F.3d 290, 291 (D.C. Cir. 2011).  *Saint Francis* did not analyze how the standardized amount is updated annually nor did it make specific legal holdings regarding the standardized amount.
[34] (Bold emphasis in original and italics and underline emphasis added.)  The BNA at 42 U.S.C. § 1395ww(e)(1)(B) is cross-referenced for 1984 at 1395ww(d)(2)(F) and for 1985 at § 1395ww(d)(3)(C).

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 10

> (i) *Maintaining budget neutrality.* (1) CMS adjusts each of the **reduced standardized amounts** determined under paragraphs (c) through (h) of this section as required for fiscal year 1984 so that the estimated amount of aggregate payments made, excluding the hospital-specific portion (that is, the total of the Federal portion of transition payments, plus any adjustments and special treatment of certain classes of hospitals for Federal fiscal year 1984) **is <u>not greater or less than</u>** 25 percent of **the payment amounts that would have been payable** for the inpatient operating costs for those same hospitals for fiscal year 1984 **under the Social Security Act as in effect on April 19, 1983**.

> (2) The aggregate payments considered under this paragraph exclude payments for per case review by a utilization and quality control quality improvement organization, as allowed under section 1866(a)(1)(F) of the Act.[35]

Similarly, the regulation at 42 C.F.R. § 412.63(v) provides the following instruction for maintaining budget neutrality for the 1985 Federal rates for IPPS:

> (v) *Maintaining budget neutrality for fiscal year 1985.* (1) For fiscal year 1985, CMS will adjust each of the reduced standardized amounts determined under paragraph (c) of this section as required for fiscal year 1985 to ensure that the estimated amount of aggregate payments made, excluding the hospital-specific portion (that is, the total of the Federal portion of transition payments, plus any adjustments and special treatment of certain classes of hospitals for fiscal year 1985) is **<u>not greater or less</u>** than 50 percent of the **payment amounts that would have been payable** for the inpatient operating costs for those same hospitals for fiscal year 1985 **under the law as in effect on April 19, 1983**.

> (2) The aggregate payments considered under this paragraph exclude payments for per case review by a utilization and quality control quality improvement organization, as allowed under section 1866(a)(1)(F) of the Act.[36]

Essentially, Congress mandated that the Secretary/CMS adjust the standardized amounts for both 1984 and 1985 to ensure that the estimated amount of aggregate payments made under IPPS was not *greater than **or** less than* what would have been payable for inpatient operating costs for the same hospitals under the prior reimbursement system (*i.e.*, reasonable costs subject to TEFRA limits). In other words, pursuant to budget neutrality, the size of the pie, expressed as average

---

[35] (Italics emphasis in original and bold and underline emphasis added.)
[36] (Italics emphasis in original and bold and underline emphasis added.)

Exhibit 1

payment per case, is prescribed by law to be *no more **and** no less* than what would have been paid had IPPS not been implemented.  Significantly, the reference points for maintaining budget neutrality for 1984 and 1985 are **<u>external</u>** to IPPS and, thus, ***fixed*** (no greater *and* no less) based on the best data available.[37]  Since these points are ***fixed*,** it also means that it is capped (*i.e.*, cannot be increased subsequently outside of the BNA).

This conclusion is supported by the fact that the normal annual inflation adjustments to the standardized amount provided for in IPPS apply only for FY 1986 forward, as set forth in 42 U.S.C. § 1395ww(b)(3)(B)(3)(i) and cross referenced in § 1395ww(d)(3)(A).  Specifically, 42 U.S.C.  § 1395ww(b)(3)(B)(i) (2018) defines the term "applicable percentage increase" starting with fiscal year 1986 (as opposed to 1984):

> (B)(i) For purposes of subsection (d) and subsection (j) for discharges occurring during a fiscal year, the "applicable percentage increase" shall be—
>
> (I) ***for fiscal year <u>1986</u>***, 1⁄2 percent,
>
> (II) for fiscal year ***1987***, 1.15 percent,
>
> (III) for fiscal year ***1988***, 3.0 percent for hospitals located in a rural area, 1.5 percent for hospitals located in a large urban area (as defined in subsection (d)(2)(D)), and 1.0 percent for hospitals located in other urban areas,
>
> (IV) for fiscal year ***1989***, the market basket percentage increase minus 1.5 percentage points for hospitals located in a rural area, the market basket percentage increase minus 2.0 percentage points

---

[37] 48 Fed. Reg. 39752, 39887 (Sept. 1, 1983) provides the following discussion supporting the Board Majority's pie concept:

> Section 1886(e)(1) of the Act requires that, for Federal fiscal years 1984 and 1985, prospective payments be adjusted so that aggregate payments for the operating costs of inpatient hospital services are neither more nor less than we estimate would have been paid under prior legislation for the costs of the same services.  To implement this provision, we are making actuarially determined adjustments to the average standardized amounts used to determine Federal national and regional payment rates and to the updating factors used to determine the hospital-specific per case amounts incorporated in the blended transition payment rates for fiscal years 1984 and 1985.  Section 1886(d)(6) of the Act requires that the annual published notice of the methodology, data and rates include an explanation of any budget neutrality adjustments. This section is intended to fulfill that requirement.
> Although, for methodological reasons, the budget neutrality adjustment is calculated on a per discharge basis, it should be emphasized that the ultimate comparison is between the aggregate payments to be made under the prospective payment system and the aggregate payments that would have been incurred under the prior legislation.  Therefore, changes in hospital behavior from that which would have occurred in the absence of the prospective payment system are required to be taken into account in determining the budget neutrality adjustment if they affect aggregate payment. For example, any expectation of increased admissions beyond the level that would have occurred under prior law would have to be considered in the adjustment. To assist in making the budget neutrality adjustment for, and take account of, fiscal year 1985, HCFA will monitor for changes in hospital behavior attributable to the new system.

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 12

for hospitals located in a large urban area, and the market basket percentage increase minus 2.5 percentage points for hospitals located in other urban areas,

(V) for fiscal year *1990*, the market basket percentage increase plus 4.22 percentage points for hospitals located in a rural area, the market basket percentage increase plus 0.12 percentage points for hospitals located in a large urban area, and the market basket percentage increase minus 0.53 percentage points for hospitals located in other urban areas,

(VI) for fiscal year *1991*, the market basket percentage increase minus 2.0 percentage points for hospitals in a large urban or other urban area, and the market basket percentage increase minus 0.7 percentage point for hospitals located in a rural area,

(VII) for fiscal year *1992*, the market basket percentage increase minus 1.6 percentage points for hospitals in a large urban or other urban area, and the market basket percentage increase minus 0.6 percentage point for hospitals located in a rural area,

(VIII) for fiscal year *1993*, the market basket percentage increase minus 1.55 percentage point for hospitals in a large urban or other urban area, and the market basket percentage increase minus 0.55 percentage point for hospitals located in a rural area,

(IX) for fiscal year *1994*, the market basket percentage increase minus 2.5 percentage points for hospitals located in a large urban or other urban area, and the market basket percentage increase minus 1.0 percentage point for hospitals located in a rural area,

(X) for fiscal year *1995*, the market basket percentage increase minus 2.5 percentage points for hospitals located in a large urban or other urban area, and such percentage increase for hospitals located in a rural area as will provide for the average standardized amount determined under subsection (d)(3)(A) for hospitals located in a rural area being equal to such average standardized amount for hospitals located in an urban area (other than a large urban area),

(XI) for fiscal year *1996*, the market basket percentage increase minus 2.0 percentage points for hospitals in all areas,

(XII) for fiscal year *1997*, the market basket percentage increase minus 0.5 percentage point for hospitals in all areas,

(XIII) for fiscal year *1998*, 0 percent,

(XIV) for fiscal year *1999*, the market basket percentage increase minus 1.9 percentage points for hospitals in all areas,

Exhibit 1

(XV) for fiscal year *2000*, the market basket percentage increase minus 1.8 percentage points for hospitals in all areas,

(XVI) for fiscal year *2001*, the market basket percentage increase for hospitals in all areas,

(XVII) for fiscal year *2002*, the market basket percentage increase minus 0.55 percentage points for hospitals in all areas,

(XVIII) for fiscal year *2003*, the market basket percentage increase minus 0.55 percentage points for hospitals in all areas,

(XIX) for each of fiscal years *2004* through *2006*, subject to clause (vii), the market basket percentage increase for hospitals in all areas; and

(XX) *for each subsequent fiscal year*, subject to clauses (viii), (ix), (xi), and (xii), the market basket percentage increase for hospitals in all areas.[38]

The "applicable percentage increase" as defined in § 1395ww(b)(3)(A) is incorporated into § 1395ww(d)(3)(A), as it relates to updating of the standardized amount:

**(B) UPDATING** PREVIOUS STANDARDIZED AMOUNTS.—

(i) For discharges occurring in a fiscal year beginning *before* October 1, 1987, the Secretary shall compute an average standardized amount for hospitals located in an urban area and for hospitals located in a rural area within the United States and for hospitals located in an urban area and for hospitals located in a rural area within each region, *equal to the respective average standardized amount computed for the previous fiscal year under paragraph (2)(D) or under this subparagraph, increased for the fiscal year involved by the applicable percentage increase under subsection (b)(3)(B)*. With respect to discharges occurring on or after October 1, 1987, the Secretary shall compute urban and rural averages on the basis of discharge weighting rather than hospital weighting, making appropriate adjustments to ensure that computation on such basis does not result in total payments under this section that are greater or less than the total payments that would have been made under this section but for this sentence, and making appropriate changes in the manner of determining the reductions under subparagraph (C)(ii).

(ii) For discharges occurring in a fiscal year beginning on or after October 1, 1987, and ending on or before September 30, 1994, the

---

[38] (Emphasis added.)

Exhibit 1

Secretary shall compute an average standardized amount for hospitals located in a large urban area, for hospitals located in a rural area, and for hospitals located in other urban areas, within the United States and within each region, equal to the respective average standardized amount computed for the previous fiscal year under this subparagraph increased by the applicable percentage increase under subsection (b)(3)(B)(i) with respect to hospitals located in the respective areas for the fiscal year involved.

(iii) For discharges occurring in the fiscal year beginning on October 1, 1994, the average standardized amount for hospitals located in a rural area shall be equal to the average standardized amount for hospitals located in an urban area. For discharges occurring on or after October 1, 1994, the Secretary shall adjust the ratio of the labor portion to non-labor portion of each average standardized amount to equal such ratio for the national average of all standardized amounts.

(iv)(I) Subject to subclause (II), for discharges occurring in a fiscal year beginning on or after October 1, 1995, the Secretary shall compute an average standardized amount for hospitals located in a large urban area and for hospitals located in other areas within the United States and within each region equal to the respective average standardized amount computed for the previous fiscal year under this subparagraph increased by the applicable percentage increase under subsection (b)(3)(B)(i) with respect to hospitals located in the respective areas for the fiscal year involved.

(II) For discharges occurring in a fiscal year (beginning with fiscal year 2004), the Secretary shall compute a standardized amount for hospitals located in any area within the United States and within each region equal to the standardized amount computed for the previous fiscal year under this subparagraph for hospitals located in a large urban area (or, beginning with fiscal year 2005, for all hospitals in the previous fiscal year) increased by the applicable percentage increase under subsection (b)(3)(B)(i) for the fiscal year involved.

Thus, while 42 U.S.C. § 1395ww(d)(2) provides the methodology for calculating the standardized amount to be used for each year, and that the amount is subject to the "applicable percentage increase" under subsection (b)(3)(B) *for years after 1984*, it remains that it is not always a simple inflationary or market basket adjustment. In particular, the FFY 1984 and 1985 BNAs (as referenced in § 1395ww(d)(2)(F) and in § 1395ww(d)(3)(C)) were the applicable percentage increases for FFYs 1984 and 1985 and, as described below, those adjustments are not administratively reviewable. Further, as discussed *infra*, it is clear that the Secretary has interpreted 42 U.S.C. § 1395ww(d)(3)(A)(i) to require the FFY 1985 budget neutrality-adjusted rates be used in

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 15

determining the rates for FFY 1986 and subsequent FFYs.  This is reflected in the following excerpt from 42 C.F.R. § 405.473(c) as initially adopted in the September 3, 1983 final rule:

> (c)  *Federal rates for fiscal years after Federal fiscal year 1984.*
>
> ****
>
> (2) *Updating previous standardized amounts.*
>
> (i) *For fiscal year 1985.*  HCFA will compute an average standardized amount for each group of hospitals described in paragraph (b)(5) of this section . . . equal to the respective adjusted average standardized amount computed for fiscal year 1984 under paragraph (b)(7) of this section—
>
> (A) Increased for fiscal year 1985 by the applicable percentage increase under § 405.463(c);
>
> (B) Adjusted by the estimated amount of Medicare payment for nonphysician services furnished to hospital inpatients that would have been paid under Part B were it not for the fact that such services must be furnished either directly by hospitals or under arrangements;
>
> (C) Reduced by a proportion equal to the proportion (estimated by HCFA) of the total amount of prospective payments which are additional payment amounts attributable to outlier cases under § 405.475; and
>
> (D) **<u>Adjusted for budget neutrality under paragraph (c)(4) of this section</u>**.
>
> (ii) **For fiscal year 1986** and thereafter, **HCFA will compute an average standardized amount** for each group of hospitals described in paragraph (b)(5) of this section, **equal to the respective <u>adjusted</u> average standardized amounts <u>computed for the previous fiscal year</u>**—
>
> (A) Increased by the applicable percentage increase determined under paragraph (c)(3) of this section; and
>
> (B) Adjusted by the estimated amount of Medicare payment for nonphysician services furnished to hospital inpatients that would have been paid under Part B were it not for the fact that such services must be furnished either directly by hospitals or under arrangements.

Exhibit 1

(C) Reduced by a proportion equal to the proportion (estimated by HCFA) of the amount of payments based on the total amount of prospective payments which are additional payment amounts attributable to outlier cases under § 405.475.

(3) *Determining applicable percentage changes for fiscal year 1986 and following*. The Secretary will determine for each fiscal year (beginning with fiscal year 1986) the applicable percentage change which will apply for purposes of paragraph (c)(2)(ii) of this section as the applicable percentage increase for discharges in that fiscal year, and which will take into account amounts the Secretary believes necessary for the efficient and effective delivery of medically appropriate and necessary care of high quality. In making this determination, the Secretary will consider the recommendations of the Prospective Payment Assessment Commission.[39]

---

[39] 48 Fed. Reg. at 39823 (italics emphasis in original and bold and underline emphasis added). This provision was later moved to 42 C.F.R. § 412.63(c)(2022) which states in pertinent part:

(c) *Updating previous standardized amounts*.

**** 

(2) Each of those amounts is equal to the respective adjusted average standardized amount computed for fiscal year 1984 under §412.62(g)—

(i) Increased for fiscal year 1985 by the applicable percentage increase in the hospital market basket;

(ii) Adjusted by the estimated amount of Medicare payment for nonphysician services furnished to hospital inpatients that would have been paid under Part B were it not for the fact that such services must be furnished either directly by hospitals or under arrangements;

(iii) Reduced by a proportion equal to the proportion (estimated by CMS) of the total amount of prospective payments that are additional payment amounts attributable to outlier cases under subpart F of this part; and

(iv) **Adjusted for budget neutrality under paragraph (h) of this section**.

(3) ***For fiscal year 1986*** and thereafter. CMS computes, for urban and rural hospitals in the United States and for urban and rural hospitals in each region, average standardized amount equal to the respective **adjusted** **average standardized amounts computed for the previous fiscal year**—

(i) Increased by the applicable percentage increase determined under paragraphs (d) through (g) of this section;

(ii) Adjusted by the estimated amount of Medicare payment for nonphysician services furnished to hospital inpatients that would have been paid under Part B were it not for the fact that such services must be furnished either directly by hospitals or under arrangements; and

(iii) For discharges occurring on or after October 1, 1985 and before October 1, 1986, reduced by a proportion (estimated by HCFA) of the amount of payments based on the total amount of prospective payments that are additional payment amounts attributable to outlier cases under subpart F of this part, and for discharges occurring on or after October 1, 1986, reduced by a proportion (estimated by HCFA) of the amount of payments that, based on the total amount of prospective payments for urban hospitals and the total amount of prospective payments for rural hospitals, are additional payments attributable to outlier cases in such hospitals under subpart F of this part.

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 17

**B.  Jurisdictional Findings -- 42 U.S.C. § 1395ww(d)(7)(A) Precludes Administrative Review of the Base Year Standardized Amounts**

The Providers essentially are challenging the standardized amount used in the IPPS rates for several FFYs claiming that the Secretary improperly treated transfers as discharges when using 1981 cost report data to determine the initial FFY 1984 base cost per discharge which, in turn, was standardized to arrive at the FFY 1984 standardized amounts.  More specifically, the Providers maintain that, the understatement of the standardized amount in the FFY 1984 IPPS Final Rule caused a corresponding underpayment in IPPS payments in FFY 1984 *and every FFY thereafter because the standardized amount for all IPPS payments for every FFY are based on CMS's calculation of the __initial__ FFY 1984 standardized amount.*[40]

The published standardized amount for each FFY in these appeals reflects the prior year's standardized amount plus "the applicable percentage increase" as provided in 42 U.S.C. § 1395ww(b)(3)(B)(i) (as referenced in 42 U.S.C. § 1395ww(d)(3)(A)) *as well as other potential adjustments*.  Significantly, the "applicable percentage increase[s]" for 1984 forward are *not* always simply a cost inflation adjustment or other similar percentage adjustment.  To this point, for the first two (2) years of IPPS, Congress mandated that the BNAs for FFYs 1984 and 1985 serve as the "applicable percentage increase" for those years.  As a result, the IPPS rates that the Secretary used *for the very first year of IPPS* and then the second year of IPPS were adjusted for budget neutrality.  For FFYs 1986 and forward, Congress provided for an "applicable percentage increase" in 42 U.S.C. § 1395ww(b)(3)(B)(i) as referenced in 42 U.S.C. § 1395ww(d)(3)(A).  In addition, there are other *permanent* adjustments (*i.e.*, adjustments not for that year only but that also apply on a going-forward basis) to the standardized amount that have occurred in other years outside of the "applicable percentage increase."[41]  Thus, the standardized amount for a particular year is an amalgamation that builds upon the prior year's standardized amount and then adds additional adjustments for the current year.  As noted *supra* and discussed more *infra*, the Secretary has used the FFY 1985 budget neutrality-adjusted rates for determining the FFY 1986 rates and those for subsequent FFYs.

The Providers are, essentially, seeking to peel back the amalgamated standardized amount for each applicable FFY *and, thus, reach back **roughly 20 to 35 years** to increase the **initial** FFY 1984 base rate that was used to set the initial FFY 1984 standardized amount*.  They would then incorporate the alleged increased base rate into the FFY 1984 standardized amoun**t**s and then simply carry or flow that *increase forward by the relevant 20 to 35 years*.  However, in order to peel the amalgamated standardized amounts for the FFYs at issue[42] *as used in the IPPS rates for each FFY* back to the initial standardized amoun**t**s (plural[43]) used in FFY 1984, and then carry/flow any change forward *to the FFY at issue*, the Providers would have to pass through the FFY 1984 and 1985 BNAs which were the only "applicable percentage increase[s]" for those years.  However, they cannot do so because the BNAs had the effect of __*fixing*__ the pie for FFYs 1984 and 1985 to

---

[40] *See e.g.,* Case 24-0998GC, Issue Statement at 1.
[41] *See* **Appendix B.**
[42] *See supra* note 24 accompanying text.
[43] *See id.*

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 18

(*i.e.*, no more *and* no less than) the aggregate amounts that would have been paid had IPPS not been implemented.[44]  More specifically, the amalgamated standardized payment amount for each FFY at issue reflects the *fixed* FFY 1985 BNA (and not the initial FFY 1984 standardized amount since the standardized amounts for FFYs 1984 and 1985 were each adjusted for budget neutrality and became *fixed* for purposes of subsequent years as a result of those BNAs).  Thus, in the Board Majority's view, the Providers cannot get back to the FFY 1984 standardized amounts without first passing through the FFY 1984 and 1985 BNAs.  Regardless, the Providers would not be able to flow forward any adjustments made to the FFY 1984 standardized amounts to FFYs after FFY 1985 because:

> (1) they, again, would not be able to get through the FFY 1984 and 1985 budget neutrality adjustments that Congress otherwise ***fixed*** to an external point (no greater and no less); and

> (2) the IPPS rates paid for FFYs 1984 and 1985 are based on standardized amounts that were adjusted downwards as a result of the budget neutrality adjustment for FFY 1984 and also for FFY 1985 (*see* discussion below in Sections B.1 and B.2).[45]

Accordingly, the Board Majority finds that the Providers challenge to the standardized amounts at issue are *inextricably* tied to the BNAs made for FFY 1984 and 1985.[46]

---

[44] *See, e.g.,* 48 Fed. Reg. 39752, 39805 (Sept. 1, 1983) (stating:  "Hospital Impact—During its first two years, aggregate payments under the prospective payment system will be adjusted, in accordance with Section 1886(e)(1) of the Act, to be "budget neutral"; that is, so that aggregate payments under the prospective payment system, including outlier payments, exceptions, and adjustments, will be neither more nor less than the estimated payment amounts to affected hospitals that would have resulted under the Social Security Act as in effect before April 20,1983.").

[45] Indeed, the FY 1986 IPPS Final Rule included an example where the Secretary recognized an adjustment to the BNAs would be impacted by the removal of nurse anesthetists costs and confirmed that the adjustments to the standardized amounts had already taken this removal into account:

> c. Nonphysician anesthetist costs.  In the August 31, 1984 final rule, we implemented section 2312 of Pub. L. 98-369, which provided that hospital costs for the services of nonphysician anesthetists will be paid in full as a reasonable cost pass-through for cost reporting periods beginning before October 1, 1987.
> We did not directly reduce the FY 1985 Federal rates to exclude the estimated costs of these services, *because any required adjustment would be incorporated in the budget neutrality adjustment factors applied to the national and regional standardized amounts*. (See 49 FR 34794; August 31, 1984). **Since the FY 1986 standardized amounts are derived from an update of the FY 1985 amounts, which were adjusted for budget neutrality, the rates will <u>automatically</u> include the appropriate adjustment**.  We are not making further adjustments to the Federal rates for this factor for either FY 1986 or FY 1987.

50 Fed. Reg. at 35708 (emphasis added).  *See also* 52 Fed. Reg. 33034, 33064 (Sept. 1, 1987) (stating:  "In the September 3, 1985 final rule, we noted that to the extent an adjustment was warranted to reflect the removal of these costs from the prospective payment rates for FY 1985, *it was incorporated in the overall **budget neutrality adjustment*** (50 FR 35708). Therefore, because this adjustment has already been built into the FY 1985 base from which the FY 1986, FY 1987, and proposed FY 1988 rates are derived, we did not propose to make further adjustments to the average standardized amounts for FY 1988.").

[46] The Board Majority notes that the D.C. Circuit's decision in *Saint Francis* is not applicable to the 1984 and 1985 BNAs given the statutory provision precluding administrative and judicial review of those adjustments.  Further,

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 19

Furthermore, Congress has precluded Board (and judicial) review of the FFY 1984 and 1985 BNAs.  Specifically, 42 U.S.C. § 1395ww(d)(7)(A) precludes administrative and juridical review of the neutrality adjustment at § 1395ww(e)(1):

> (7) There shall be no administrative or judicial review under section 1395oo of this title or otherwise of—
>
> (A) the determination of the requirement, or the proportional amount, of any adjustment effected pursuant to subsection (e)(1) or the determination of the applicable percentage increase under paragraph (12)(A)(ii), . . .[47]

Similarly, the statute governing Board appeals is located at 42 U.S.C. § 1395oo and states in subsection (g)(2):

> The determinations and other decisions described in section 1395ww(d)(7) of this title shall not be reviewed by the Board or by any court pursuant to an action brought under subsection (f) or otherwise.

Since the FFY 1984 and 1985 BNAs are based on an ***external, fixed*** reference point (*i.e.*, no greater and no less than the reference point) and are not reviewable, the Board Majority finds that the FFYs 1984 and 1985 BNAs effectively fixed the standardized amounts from that point forward for use in the IPPS system.[48]

---

*Saint Francis* did not analyze how the standardized amount is updated annually nor did it make specific legal holdings regarding the standardized amount.

[47] With regard to implementing this statutory provision, 48 Fed. Reg. 39752, 39785 (Sept. 1, 1983) states:
   Section 1886(d)(7) of the Act precludes administrative and judicial review of the following:
      —A determination of the requirement, or the proportional amount, of any "budget neutrality" adjustment effected under section 1886(e)(1) of the Act; or
      —The establishment of DRGs, of the methodology for the classification of individual discharges within DRGs, or of the appropriate weighting factors of DRGs under section 1886(d)(4) of the cost. It was the clear intent of Congress that a hospital would not be permitted to argue that the level of the payment that it receives under the prospective payment system is inadequate to cover its costs. Thus, as discussed above, neither the definition of the different DRGs, their weight in relation to each other, nor the method used to assign discharges to one of the groups is to be reviewable. However, if there is an error in the coding of an individual patient's case, review would be permitted. (See the Report of the Committee on Ways and Means on H.R. 1900, H. Report No. 98-25, (98th Cong., 1st Sess.) 143 (1982).) As noted below, we believe the appropriate review concerning coding errors should be conducted by the entity (i.e., the PSRO/PRO or fiscal intermediary) which made the initial determination.

[48] *See, e.g.,* 48 Fed. Reg. 39752, 39765 (Sept. 1, 1983) (stating "We point out that aside from being technically desirable, the effect of standardizing nonlabor hospital costs in Alaska and Hawaii is to decrease the reduction for budget neutrality stemming from the requirements in section 1886(e)(1)(B) of the Act.").

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 20

Indeed, the Secretary's implementation of the fixed FFY 1984 and 1985 BNAs confirms that the Providers' allegation that the standardized rates for ***each FFY at issue*** are somehow understated due to alleged errors in the FFY 1984 base rate is moot.

1. *The Secretary determined that the initial standardized amounts for FFY 1984 were too high and, therefore, reduced the FFY 1984 standardized amounts through the FFY 1984 BNA as reflected in the **final** FFY 1984 IPPS rates*.

In the interim final rule published on September 1, 1983, the Secretary issued a FFY 1984 BNA to the FFY 1984 standardized amounts of 0.969:

> Section 1886(e)(1) of the Act requires that the prospective payment system result in aggregate program reimbursement equal to "what would have been payable" under the reasonable cost provisions of prior law; that is, for fiscal years 1984 and 1985, the prospective payment system should be "budget neutral."

> Under the Amendments, the prospective payment rates are a blend of a hospital-specific portion and a Federal portion. Section 1886(e)(1)(A) of the Act requires that aggregate payments for the hospital specific portion should equal the comparable share of estimated reimbursement under prior law. **Similarly, section 1886(e)(1)(B) of the Act <u>requires</u> that aggregate reimbursement for the Federal portion of the prospective payment rates plus any adjustments and special treatment of certain classes of hospitals should equal the corresponding share of estimated outlays prior to the passage of Pub. L. 98--21**. Thus, for fiscal year 1984, 75 percent of total projected reimbursement based on the hospital-specific portion should equal 75 percent of total estimated outlays under law as in effect prior to April 20, 1983. Likewise, total estimated prospective payment system outlays deriving from the 25 percent Federal portion, including adjustments and special payment provisions, should equal 25 percent of projected reimbursement under prior laws.

> **The adjustment of the Federal portion was determined as follows**:

> • *Step 1*—Estimate total incurred payments for inpatient hospital operating costs for fiscal year 1984 that would have been made on a reasonable cost basis under Medicare prior to Pub. L. 98-21.

> • *Step 2*—Multiply total incurred payments by 25 percent, i.e., the Federal portion of total payment amounts for fiscal year 1984.

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 21

- *Step 3*—Estimate the Federal portion of total payments that would have been made without adjusting for budget neutrality, but with the adjustment for outlier payments.

- *Step 4*—Add an estimate of total adjustments and payments under special payment provisions to the Federal portion (e.g., outliers, indirect medical education).

- *Step 5*—The difference between the step 2 and step 4 amounts is divided proportionally among the standardized amounts, resulting in the budget neutrality adjusted (standardized) amounts.

**The resulting adjustment factor for the fiscal year 1984 <u>Federal portion</u> is .969**. Payment amounts of hospitals excluded from the prospective payment system (e.g., psychiatric and children's hospitals) and of hospitals not participating in prospective payment because of their participation in demonstrations and studies were not included in the calculations above.[49]

In the final rule published on January 3, 1984, the Secretary revised the Federal BNA factor to 0.970 using the same methodology.[50]  Significantly, in the January 1984 final rule, the Secretary suggests that, in calculating the BNA factor, CMS made no attempt to adjust for transfers under IPPS:

Regarding additional adjustments recommended by commenters, we made no adjustments to either the adjusted standardized amounts or to the budget neutrality estimates for conditions that could not be quantified on the basis of currently available data, even if there were a likelihood that these conditions might exist under prospective payment.  For example, no adjustment was made for the likelihood that admissions would increase more rapidly under prospective payment than under the provisions of Pub. L. 97-248, or for costs that might be disallowed as a result of audit or desk review by the intermediaries.  *Likewise, we made no attempt to quantify adjustments* **for the likelihood of transfers** *under prospective payment*, emergency room services, and disallowed costs which are successfully appealed.[51]

---

[49] 48 Fed. Reg. 39752, 39840-41 (Sept. 1, 1983) (bold, underline emphases added, and italics emphasis in original).

[50] 49 Fed. Reg. 234, 334 (Jan. 3, 1984).

[51] *Id.* at 255 (emphasis added.)  *See also id.* at 331 (stating as part of the discussion on the BNAs: "The Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA) established a DRG-adjusted limit on the allowable amount of inpatient operating costs per case and a per case limit on the rate of increase of operating costs of inpatient hospital services. Due to these per case limits, the incentives that influence hospital admission patterns are similar under TEFRA and prospective payment. Accordingly, ***we have assumed that the number of admissions under both prior law and the prospective payment system will be the same***. As a result, the budget neutrality factors can be calculated by comparing

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 22

Accordingly, while the Providers did not appeal the BNAs, the above excerpt suggests that the Providers' concern about the Secretary's alleged mistreatment of transfers may be misplaced and that the treatment of transfers in the in the context of the BNA for FFY 1984 may have more significance.

Finally, the Secretary also declined to increase the base standardized amount to reflect the increased costs associated with the shift in costs of hospital-based physician services from Part B to Part A, as suggested in a comment. The Secretary noted that such an increase would simply be offset or neutralized by a corresponding increase in the BNA for FFY 1984:

> Finally, applying such an adjustment to the average standardized amounts (and, by extension, to the per case budget neutrality estimates of Federal rate payments) would not actually increase the level of payments under budget neutrality. If we were to increase the initial standardized amounts to reflect this shift, the budget neutrality adjustment factor would have to be recalculated, would accordingly be increased, and the net result would be virtually identical. As a result, such an adjustment would have no effect on payment levels during FYs 1984 and 1985, which are subject to budget neutrality.[52]

Regardless, the Secretary's application of a 0.970 BNA factor to the FFY 1984 standardized amounts for the Federal rates confirms that these standardized rates were too high and were reduced by a factor of 0.030. Thus, the ***final*** IPPS payment rates as used for the first year of IPPS (*i.e.*, FFY 1984), as finalized on January 3, 1984, reflect the Secretary's FFY 1984 BNA. Moreover, as previously noted, since the FFY 1984 BNA is based on an ***external, fixed*** reference point (*i.e.*, no greater and no less than the reference point) and is not reviewable, the FFY 1984 BNA effectively ***fixed*** the standardized amounts for FFY 1984 as used from that point forward (*i.e.*, as used both for the FFY 1984 IPPS payment rates and for subsequent years).

> 2. *The FFY 1985 BNA also reduced the FFY 1985 standardized amounts, reaffirming that the Secretary's determined that the initial standardized amounts for FFY 1984 were set too high.*

For FFY 1985, the Secretary applied a BNA of 0.954 to the standardized amounts used for the Federal national rates and 0.950 to the standardized amounts used for the regional rates. The Secretary described these adjustments as follows:

> In accordance with section 1886(e)(1) of the Act, the prospective payment system should result in aggregate program reimbursement equal to "what would have been payable" under the reasonable

---

reimbursement per discharge for each of the systems, and there is no need to estimate an actual number of hospital admissions." (emphasis added)).

[52] *Id.* at 255.

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 23

> cost provisions of prior law; that is, for FYs 1984 and 1985, the prospective payment system must be "budget neutral".
>
> During the transition period, the prospective payment rates are a blend of a hospital-specific portion and a Federal portion. ***Further, effective October 1, 1984***, *the Federal portion will be a blend of national and regional rates*. As a result, we must determine three budget neutrality adjustments— one each for both the national and regional rates, and one for the hospital-specific portions. The methodology we are using to make these adjustments is explained in detail in section V. of this addendum.
>
> Based on the data available to date, we have computed the following Federal rate budget neutrality adjustment factors:
>
> Regional—.950
> National—.954[53]
>
>               ****

By finalizing an adjustment factor less than one (1), the Secretary confirmed that the standardized amounts were too high. Thus, like her BNA made for FFY 1984, the Secretary again confirmed that the standardized amounts were too high and exercised her discretion to reduce the standardized amounts to be used in the ***final*** FFY 1985 IPPS rates.[54]

   *3.* *The Secretary has applied the FFY 1985 budget neutrality-adjusted rates to FFY 1986 and subsequent years.*

For FFY 1986, the Secretary confirmed that she used the FFY 1985 budget-neutrality-adjusted federal rates as the basis for determining the FFY 1986 federal rates:

> [T]he FY 1985 adjusted average standardized amounts (Federal rates) were required by law to be adjusted to achieve budget neutrality; that is, to ensure that aggregate payments for the operating costs of inpatient hospital services would be ***neither more <u>nor</u> less than*** *we estimated would have been paid under prior legislation for the costs of the same services*. (The technical

---

[53] 49 Fed. Reg. 34728, 34769 (Aug. 31, 1984).

[54] In the preamble to the FFY 1985 Final Rule, the Secretary "noted that most of the data that the budget neutrality adjustment is based on has already been made available [to the public]. We believe that these data in conjunction with the explanation of the budget neutrality methodology presented in the NPRM (49 FR 27458) should enable individuals to replicate the adjustment factors. . . . In addition, <u>we believe the lengthy and detailed description of the data and the development of rates contained in the **Federal Register**, along with the many examples furnished, afford the reader all the information necessary for an understanding of the prospective payment system.</u> Those individuals, hospitals, or associations desiring additional data and other material, either for verification of rates or for other purposes, may request this date under the Freedom of Information Act." 49 Fed. Reg. at 34771.

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 24

> explanation of how this adjustment was made was published in the
> August 31, 1984 final rule (49 FR 34791).) ***These budget
> neutrality-adjusted rates for FY 1985 are then to be used as the
> basis for the determination of rates for later years***.
>
> Our FY 1985 budget neutrality adjustment factors were based on
> data and assumptions that resulted in standardized amounts that
> were higher than necessary to achieve budget neutrality.
> Therefore, we have updated the FY 1985 standardized amounts
> using a factor that takes into account the overstatement of the FY
> 1985 amounts ***to ensure that accuracy of the FY 1986
> standardized amounts***. To this end, we have identified several
> factors, discussed in section III.A.3.c., below, that contributed to
> the *overstatement* of the FY 1985 standardized amounts. We have
> determined an appropriate percent value for each of them, and
> have combined them into a proposed composite ***correction*** factor
> for FY 1986 that equals —7.5 percent.[55]

Significantly, in the above excerpt, the Secretary further confirmed that "[t]hese budget
neutrality-adjusted rates for FY 1985 are then to be used *as the basis for the determination of
rates **for later years**.*"[56]  While it is true that the implementation of these rates for FFY 1986
were delayed by Congressional action extending the FFY 1985 rates through April 30, 1986 (as
discussed further in **Appendix B**), the Secretary confirmed that it used the rates published in the
FFY 1986 IPPS Final Rule plus a 1.0 percent modification specified by Congress:

> Section 9101(a) of Pub. L. 99-272 amends section 5(c) of Pub. L.
> 99-107 to extend the FY 1985 inpatient hospital prospective
> payment rates through April 30,1986. Therefore, the DRG
> classification changes and recalibrated DRG weights that were set
> forth in the September 3,1985 final rule (50 FR 35722) are
> effective for discharges occurring on or after May 1, 1986.
>
> ****
>
> In accordance with the provisions of section 9101(b) and (e) of
> Pub. L. 99-272, the adjusted standardized amounts that were
> published in the September 3,1985 final rule (which reflected a

---

[55] 50 Fed. Reg. 35646, 35695 (Sept. 3 1985) (emphasis added).  *See also* 49 Fed. Reg. at 34767 (stating "We believe
the explicit language of section 2310 of Pub. L. 98-369 and section 1886(d)(3)(A) of the Act requires a reduction in
the standardized amounts used to compute the Federal rates before adjusting for budget neutrality. . .. Thus, while
the Federal rates. . .. have been reduced in this final rule to reflect the inflation factor prescribed by section 2310 of
Pub. L. 98-369, we point out that the offset for budget neutrality has also been adjusted. The reduction in the
regional and national standardized rates . . . attributable to section 2310 of Pub. L. 98-369 is entirely due to the
revised budget neutrality adjustments for 1984 and 1985.").
[56] *Id.* (emphasis added).

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 25

> zero percent update) are updated by one-half of one percent
> effective for discharges on or after May 1,1986. The revised
> standardized amounts are set forth in Table 1, below.[57]

The Board Majority has set forth in **Appendix C** excerpts from the preambles of other final rules to provide additional contexts in which the Secretary confirmed that the FFY 1985 budget neutrality-adjusted rates applied to later years.  Thus, *regardless of how the Providers contend the Medicare statute should be interpreted relative to the 1985 BNA*, it is clear that:

- The Secretary herself interpreted those provisions as requiring the application of the FFY 1985 budget neutrality-adjusted rates to later years; and

- The FFY 1985 budget neutrality-adjusted rates are the basis for the rates used in FFY 1986 forward through to the years at issue.

Indeed, the Providers acknowledge that they are not challenging the FFY 1985 BNA and acknowledge that the Secretary used the FFY 1985 budget-neutrality adjusted standardized amounts to set the standardized amounts for FFY 1986 and subsequent years.[58]  Accordingly, given the incorporation of the FFY 1985 budget-neutrality-adjusted rates into subsequent years, the Board Majority finds that the Providers' issue is inextricably tied, at a minimum, to the FFY 1985 BNA.

> 4. *The Provider **improperly** raises new issues in its Response to the Medicare Contractors' Jurisdictional Challenge that are not part of these appeals.*

As discussed above, the Providers admit that the Secretary used the FFY 1985-budget-neutrality adjusted rates to set the standardized amounts for FFY 1986 and subsequent years and that they do not challenge the FFY 1985 BNA.[59]  However, the Providers then try to use their Response to the Medicare Contractor's Jurisdictional Challenge to ***improperly*** add new issues to their appeal by challenging the Secretary's implementation of the FFY 1984 and 1985 BNAs, including but not limited to challenging the Secretary's use of the 1985-budget-neutrality adjusted rates to set the standardize amount rates for FFY 1986 and subsequent years by claiming the Secretary failed to follow the statutory directives of Congress in calculating the standardized amount rates for FFY 1986 and subsequent years.  These challenges are new issues that are not part of the groups' original appeal.

Pursuant to 42 C.F.R. § 405.1837(a)(2), a group must *only* "involve[] a single question of fact or interpretation of law, regulations, or CMS Rulings that is common to each provider in the group."  Consistent with this requirement, 42 C.F.R. § 405.1837(c)(3) specifies that a group appeal request must include "a precise description of the one question of fact or interpretation of law, regulations, or CMS Rulings that is common to the particular matter at issue in the group

---

[57] 87 Fed. Reg. 16772, 16773 (May 6, 1986).
[58] Providers' Response to MAC Jurisdictional Challenge at 12, 22, 58.
[59] Providers' Response to MAC Jurisdictional Challenge at 12, 22.

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 26

appeal."  Further, the group appeal request must explain "why the provider[s] believe[] Medicare payment is incorrect for each disputed item" and "[h]ow and why the provider[s] believe[] Medicare payment must be determined differently for each disputed item."  Consistent with these two (2) regulatory provisions, 42 C.F.R. § 405.1837(f)(1) specifies that, after a group appeal request is filed, "a provider *may **not** add* other questions of fact or law to the appeal, *regardless of whether the question is common to other members of the appeal*."

Here, the Providers only challenged the ***initial*** federal standardized amounts established under the IPP for FFY 1984 as improper by asserting that the Secretary failed to exclude transfers when determining the base cost per discharge rate mandated in 42 U.S.C. § 1395ww(d)(2)(A) as demonstrated in the excerpts taken from the group issue statements quoted above.  The Providers *belated* focus on the Secretary's use of the 1985-budget-neutrality adjusted rates in the FFY 1986 rates and subsequent years illustrates the underlying problem with these appeals, namely the failure to trace the causality of the alleged error in setting the original FFY 1984 standardize amount rates and those at issue as used roughly from 24 to 37 years later.[60]

The Providers stance on this discovery suggests that the real issue with the standardized amounts used in the years at issue may now be their new allegation that the Secretary improperly used the FFY 1985 budget neutrality-adjusted rates in setting their current rates:

> As for FFY 1985, the MACs are plain wrong. For FFY 1984, the Secretary proposed and finalized its regulation only carrying forward the FFY 1984 § 405.473(b)(7) values to start the FFY 1985 calculation. *See* § 405.473(c)(2)(i) at Exhibit P-17.
>
> As for FFY 1986, the MACs are correct: the Secretary did violate Congress's command.  **Congress precluded the Secretary from bringing the FFY 1985 § (d)(3)(C)/§ 405.473(c)(3)(i)(D) BNA forward into the FFY 1986 calculation (*see* § (d)(3)(A))—but the Secretary did so anyway**.  *See* § 405.473(c)(4) at Exhibit P-17; Exhibits P-23& P-24 § 412.63(c)(3).
>
> ****
>
> Through the course of responding to the MAC's *Jurisdictional Challenge*, it has come to Providers' attention that **the Secretary erroneously applied** the FFY 1985 BNA—in addition to the error they originally raised (the understated standardized amounts).
>
> ****
>
> **The Secretary's subsequent <u>incorporation</u> of the FFY 1985 § (d)(3)(C) BNA into the FFY 1986 § (d)(3)(A) average standardized amounts violated Congress's command that the**

---

[60] *See* **Appendix B** (providing examples of other adjustments to the standardized amount that may potentially break the causal link from FFY 1984 to the fiscal years at issue).

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 27

> Secretary start with the FFY 1985 § (d)(3)(A) value, which did not
> include the FFY 1985 (d)(3)(C) BNA. Exhibit P-3
> § 1395ww(d)(3)(A), Nov. 8, 1984; see also Exhibit P-3 at PL
> 99-272, April 7, 1986, 100 Stat 82; PL 99-349, July 2, 1986, 100
> Stat 710; PL 99-509, Oct. 21, 1986, 100 Stat 1874; & PL 99-514,
> Oct. 22, 1986, 100 Stat 2085.[61]

The Providers' group issue statements do not challenge the use of the FFY 1985 budget
neutrality-adjusted rates in setting the rates for FFY 1986 and subsequent years and the Providers
may not now add that issue to their appeal.  Accordingly, the Board ***dismisses*** the Providers' new
issue related to the use of the FFY 1985 budget-neutrality-adjusted rates for FFY 1986 and
subsequent years pursuant to 42 C.F.R. §§ 405.1837(a)(2), (c), and (f)(1).[62]

\* \* \* \* \*

The Board Majority finds that it lacks substantive jurisdiction over the issue raised in these appeals
because the ***prospectively-set*** standardized amounts used for IPPS rates for FFYs 1984 and FFY
1985 are each based on the BNA made for that FFY and the 1984 and 1985 BNAs are presumably
designed to be corrective of the initial base rate that was set *using 1981 data*.[63]  Therefore, the *final*
FFY 1984 and 1985 standardized amounts are *inextricably tied* with those applicable BNAs.[64]

---

[61] Provider's Response to the Medicare Contractors' Jurisdictional Challenge at 58, 61, 63.

[62] *See also* Board Rule 8.  Consistent with these regulations, Board Rule 8.1 (July 2015) specifies:  "Some issues
may have multiple components. To comply with the regulatory requirement to **specifically** *identify* the items in
dispute, **each** contested component must be appealed as a *separate issue **and** described as **narrowly** as possible*
using the applicable format outlined in Rule 7."  (Emphasis added.)  *See also Evangelical
Comty. Hosp. v. Becerra*, No. 21-cv-01368, 2022 WL 4598546 at *5 (D.D.C. 2022):
> The Board acts reasonably, and not arbitrarily and capriciously, when it applies its "claims-
> processing rules faithfully to [a provider's] appeal." *Akron*, 414 F. Supp. 3d at 81. The regulations
> require that a RFH provide "[a]n explanation [ ]for each specific item under appeal." 42 C.F.R.
> § 405.1835(b)(2).  The Board rules further explain that "[s]ome issues may have multiple
> components," and that "[t]o comply with the regulatory requirement to specifically identify the items
> in dispute, each contested component must be appealed as a separate issue and described as narrowly
> as possible." Board Rules § 8.1. The Board rules also specifically delineate how a provider should
> address, as here, a challenge to a Disproportionate Share Hospital reimbursement. Board Rule 8.2
> explains that an appeal challenging a Disproportionate Share Hospital payment adjustment is a
> "common example" of an appeal involving issues with "multiple components" that must be appealed
> as "separate issue[s] and described as narrowly as possible." Board Rules §§ 8.1, 8.2.

[63] The Board Majority has included at **Appendix B** examples of other adjustments to the standardized amounts that have
occurred outside of the FFY 1984 and 1985 BNAs.  These intervening adjustments for FFYs 1986 and 2018 include both
mandatory and discretionary revisions ***to the standardized amounts*** (as well as the Congress' decisions to revise or not
revise the "applicable percentage increases" for FFYs 1986 and forward as provided in 42 U.S.C. § 1395ww(b)(3)(B)(i))
and highlight the complexity of the issue before the Board, particularly where such adjustments were made in a budget
neutral manner or were based on factoring in certain other estimated impacts

[64] *See DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 507 (D.C. Cir. 2019) ("We cannot review the Secretary's method of
estimation without also reviewing the estimate. And because the two are inextricably intertwined, section
1395ww(r)(3)(A) precludes review of both."); *Mercy Hosp., Inc. v. Azar*, 891 F.3d 1062, 1067 (D.C. Cir. 2018) ("As
both a textual and a practical matter, the LIP adjustment is inextricably intertwined with the step-two rate, and so the

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 28

Indeed, the Secretary applied a BNA to those years to reduce the standardized amounts by factors of approximately 0.03 for FFY 1984 and 0.05 for FFY 1985 and, thus, these BNAs appear to have already automatically accounted for any such alleged errors in setting the initial base rate (which again was based on *1981 data*).[65]  Because the FFY 1985 budget neutrality-adjusted rate was used/flowed forward for determining FFY 1986 rates and the rates for subsequent rates for subsequent FFYs and because 42 U.S.C. 1395ww(d)(7) prohibits administrative or judicial review of the FFY 1984 and 1985 BNAs and the resulting *final* standardized amounts for FFY 1985 was carried/flowed forward to FFY 1986 and succeeding FFYs, the Board Majority finds that it may not review the standardized amount used for the FFYs being appealed as it relates to the common issue in these appeals.[66]  In this regard, the Board Majority again notes that the rates for FFY 1986 and subsequent years are based on the FFY 1985 budget-neutrality-adjusted rate and the Providers may not simply pass through, or over, the BNAs for FFYs 1984 and 1985, *for purposes of future FFYs*, because those adjustments are tied to an absolute *external* event (the Secretary's estimate, based on the best available data, of what would have been paid for those years if there were no IPPS) **_and_** were **fixed** (no greater *and* no less than what would have been paid had there been no IPPS).  To do otherwise, would impact the very integrity of IPPS.

Accordingly, the Board Majority finds that: (1) the appealed issue is *inextricably* tied with the FFY 1984 and 1985 BNAs to the standardized amounts *for purposes of future FFYs* under the operation of 42 U.S.C. §§ 1395ww(b)(3)(B), 1395ww(d)(3)(A), and both 1395ww(d)(2)(F) and 1395ww(d)(3)(C) which reference 1395ww(e)(1)(B), as demonstrated by the fact that the FFY

---

shield that protects the step-two rate from review protects the LIP adjustment as well."); *Yale New Haven Hosp. v. Becerra*, 56 F.4th 9, 18 (2nd Cir. 2022) ("Thus, we join the D.C. Circuit in "reject[ing] the argument that 'an "estimate" is not the same thing as the "data" on which it is based."" *DCH Reg'l Med. Ctr. v. Azar* . . . . We also adopt the D.C. Circuit's holding that "[i]n this statutory scheme, a challenge to the [Secretary's choice of what data to include and exclude] for estimating uncompensated care is ... a challenge to the estimates themselves. The statute draws no distinction between the two." *Id*. at 506. Indeed, the statutory text of section 1395ww(r)(2)(C)(i) explicitly and affirmatively defines the statutory term "estimate[ ]" to encompass "the Secretary['s] determin[ation]" of what data is the "be[st] proxy for the costs of [qualifying] hospitals for treating the uninsured" and, ultimately, of what data to "use" or not "use." 42 U.S.C. § 1395ww(r)(2)(C)(i)." (citations partially omitted)).  Similarly, the Board Majority notes that the Board erred in finding that it had jurisdiction in *Columbia/HCA 1984-1986 PPS Federal Rate/Malpractice Group v. Blue Cross & Blue Shield Ass'n*, PRRB Dec. 2000-D74 (Aug. 18, 2000).  In that decision, the Board found that "the issue in this case, whether the federal portion of the PPS rates should be adjusted because it was based on 1981 hospital cost report data which incorporated an invalid 1979 Malpractice Rule, does not fall into either [of the] limitations on Board jurisdiction [at 42 U.S.C. §§ 1395ww(d)(7) or 1395oo(g)(2)]. The Board finds that it can determine whether the existing statute and regulations concerning the establishment of the federal portion of the PPS rate require or permit retroactive adjustments." *Id*. at 16.  The Board further found that "the retroactive adjustment proposed by the Provider would increase the federal portion of the PPS rates *and therefore require some adjustment to be made to maintain budget neutrality*. 42 U.S.C. § 1395ww(e) and 42 C.F.R. § 412.63(j)" but that "[b]ecause the Board has determined that the adjustments are not required, how those adjustments would be made are moot, and in any event would not be subject to review by the Board. 42 C.F.R. § 405.1804(a)." *Id*. at 18 (Emphasis added.)  While the Board's 2000 decision got it right that the FFY 1984 budget neutrality provision is implicated and precluded from administrative review, the above case law demonstrates that the Board erred in finding it could review the FY 1984 standardized amounts.  Rather, the case law (as well as the Board Majority's discussion herein) demonstrates that any adjustment to the FFY 1984 standardized amounts would be *inextricably* tied to the ensuing BNAs made for FFYs 1984 and 1985.

[65] *See supra* note 45 (discussing how the removal of nurse anesthetists costs were removed from IPPS and how that removal was *automatically* accounted for as part of the 1985 BNA).

[66] *But see supra* note 26.

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 29

1985 budget-neutrality adjusted rates were used as the basis for the determination of rates for FFY 1986 and later years; and (2) 42 U.S.C. §§ 1395oo(g)(2) and 1395ww(d)(7) (and related implementing regulations[67]) prohibit administrative and judicial review of those BNAs. Based on these findings, the Board Majority concludes that it does not have substantive jurisdiction[68] over the issue in the five hundred and two (502) group cases listed in **Appendix A**, and hereby closes these five hundred and two (502) group cases and removes them from the Board's docket. Review of this determination may be available under the provisions of 42 U.S.C. § 1395oo(f) and 42 C.F.R. §§ 405.1875 and 405.1877.

Board Members Participating:                     For the Board:

Clayton J. Nix, Esq.                                                          9/27/2024
Kevin D. Smith, CPA
Ratina Kelly, CPA                               X  Clayton J. Nix
Nicole E. Musgrave, Esq. (concurring in part,  _____
dissenting in part)                             Clayton J. Nix, Esq.
                                                Chair
                                                Signed by: PIV

Appendices  A – Listing of Cases Covered by this Notice of Dismissal
            B – Examples of other adjustments to the standardized amount that may potentially
                break the causal link from FFY 1984 to the fiscal years at issue
            C – Additional Excepts from FFY 1985 IPPS Final Rule Affirming Application of
                FFY 1985 budget-neutrality-adjusted rates to FFY 1986 and subsequent years.

cc:    Byron Lamprecht, WPS Government Health Administrators (J-8, J-5)
       Pamela VanArsdale, National Government Services, Inc. (J-6)
       Danelle Decker, National Government Services, Inc. (J-K)
       Cecile Huggins, Palmetto GBA (J-J)
       Dana Johnson, Palmetto GBA c/o National Government Services, Inc. (J-M)
       Judith Cummings, CGS Administrators (J-15)
       Michael Redmond, Novitas Solutions, Inc. c/o GuideWell Source (J-H)
       Dean Wolfe, Noridian Healthcare Solutions (J-F)
       Geoff Pike, First Coast Service Options, Inc. c/o GuideWell Source (J-N)
       Wilson Leong, FSS
       Jacqueline Vaughn, CMS OAA

---

[67] *See, e.g.*, 42 C.F.R. §§ 405.1804, 405.1840(b)(2).
[68] The Board has not formally reviewed the 504 plus cases for other aspects of jurisdiction, including claims filing requirements (*e.g.*, timeliness) or whether any revised NPRs were appeal and, if so, whether the relevant Provider(s) properly appealed the revised NPR(s).

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 30

**Concurring in part, dissenting in part**

I concur with the majority's dismissal of the Providers' challenge to the FFY 1986 standardized amount rates and subsequent years as being improperly based on the FFY 1985 budget-neutrality adjusted rates. However, for the reasons explained below, I dissent from the Board Majority's decision regarding the issue of whether CMS' failure to remove transfer cases from its discharge data decreased the Standardized Amount, and would find that the Board has substantive jurisdiction in this case.

The Providers' issue statement is essentially the same as that in *St. Mary's Reg'l Med. Ctr., et al. v. Becerra, No. 1:23-cv-01594 (D.D.C. filed June 2, 2023) ("St. Mary's")*[69], an appeal from the Board's "Dismissal Based on Lack of Substantive Jurisdiction" dated April 6, 2023,[70] the Board's first decision on the topic of "Understated IPPS Standardized Amount" after the D.C. Circuit ruled in *Saint Francis Med. Ctr. v. Azar*, 894 F.3d 290 (D.C. Cir. 2018) ruling that the reopening regulation – and thus its predicate facts position – does not apply to appeals made to the Board.

In these "Understated IPPS Standardized Amount" cases, the providers consistently argue that a computational error at the inception of the IPPS has not been corrected,[71] that "the Secretary failed to properly distinguish between patient transfers and discharges in establishing the PPS1983 base year amounts,[72] and that "the resulting understated initial base year amounts were carried forward across 35 years resulting in the alleged understated standardized amount used for setting the FFY 2019 IPPS payment rates."[73]

The majority finds that the Board has no jurisdiction based on the presupposition that the final FFY 1984 and 1985 standardized amounts (which were based on 1981 discharge data) were adjusted for budget neutrality, thus, the final rates in those years are *inextricably tied* with budget neutrality adjustments for which administrative and judicial review is prohibited by 42 U.S.C. § 1395ww(d)(7). The Board Majority rationalizes its conclusion by stating that the initial 1983

---

[69] "The Hospitals challenge their Medicare inpatient hospital payments for Federal Fiscal Year ("FFY") 2019 as being unlawfully understated because the Secretary calculated them using a "standardized amount" that was invalidly low because of an embedded error from the Secretary's original implementation of the Medicare Hospital Inpatient Prospective Payment System ("IPPS") in FFY 1984." *St. Mary's Reg'l Med. Ctr., et al. v. Becerra, No. 1:23-cv-01594 (D.D.C. filed June 2, 2023), Complaint at 25.*

[70] Dismissal Based on Lack of Substantive Jurisdiction, Case Nos. 19-1723GC, 19-1735GC, 19-1763GC, 19-0233GC, and 19-1628GC (Apr. 6, 2023), available at https://www.cms.gov/files/document/prrb-jurisdictional-decisions-4-1-2023-through-4-30-2023.pdf (last accessed Sept. 23, 2024); *see also, St. Mary's Reg'l Med. Ctr., et al. v. Becerra, No. 1:23-cv-01594 (D.D.C. filed June 2, 2023),* Complaint at 28 ("on April 6, 2023, the Board dismissed the Hospitals' administrative appeals, holding *for the first time* in any administrative appeal raising this substantive issue that the Budget Neutrality Preclusion Provisions strip it of jurisdiction over the Hospitals' claims.")

[71] See Saint Francis Med. Ctr. v. Azar, 894 F.3d 290 (D.C. Cir. 2018).

[72] Dismissal Based on Lack of Substantive Jurisdiction, Case Nos. 19-1723GC, 19-1735GC, 19-1763GC, 19-0233GC, and 19-1628GC (Apr. 6, 2023), at 3, available at https://www.cms.gov/files/document/prrb-jurisdictional-decisions-4-1-2023-through-4-30-2023.pdf (last accessed Sept. 23, 2024);

[73] *Id.*

Exhibit 1

standardized amount was overstated, so therefore the initial base rate that was set using 1981 data could not have been erroneous. I respectfully disagree.

The Providers have presented several arguments as to why the standardized amount is understated; that is not for me to decide today. My dissent over the majority's conclusion that the Board has no substantive jurisdiction over this appeal solely because 42 U.S.C. § 1395ww(d)(7) prohibits administrative or judicial review of the FFY 1984 and 1985 budget neutrality adjustments. To reach their conclusion, my colleagues have skipped ahead to an analysis of the budget neutrality adjustments, and passed over the Providers' challenge to the accuracy of the 1981 discharge data.[74] The Providers are not challenging the "determination of the requirement, or the proportional amount, of any budget neutrality adjustment" in IPPS rates, which is what the plain language of 42 U.S.C. § 1395ww(d)(7) prohibits. Rather than consider the issue to be that CMS did not properly calculate the average cost per discharge, my colleagues prejudicate that the data cannot be reviewed because a subsequent calculation utilizing that data was later incorporated into an adjustment which was deemed sacrosanct by a Congress that readily admitted the data was flawed.[75]

In reaching my decision, I am persuaded by the concurring opinion in *St. Francis* asserting "it is not reasonable for HHS to 'cement misclassified' costs into 'future reimbursements, thus perpetuating literally million-dollar mistakes.'"[76] Additionally, I note the rulemaking for the Capital PPS Final Rule, whereby CMS applied a correction factor for capital-related costs in the

---

[74] *See* Providers' PPP at 10.

[75] "The case mix index values used in the PPS model were based on billing information reported in 1981. At that time, the patient diagnostic information necessary for DRG assignment was completely unrelated to payment. ***As a result, the 1981 bills contain a variety of errors which tend to cause the hospital case mix values to be understated.*** Hospital PPS payments, however, are based on the diagnostic information reported on the current bills, under very different incentives. Therefore, an increase in overall hospital case mix under PPS was anticipated." Adjustments in Medicare's Prospective Payment System, S. Hrg. 98-1122, Hearing before the Subcommittee on Health of the Committee on Finance, United States Senate, Ninety-Eighth Congress, Second Session, August 8, 1984, available at https://www.finance.senate.gov/imo/media/doc/HRG98-1122.pdf, page 14 of 147 (accessed July 11, 2024) (***emphasis added***). *See also*, Providers' PPP at 27, citing the FFY 1984 IPPS Final Rule and the 1992 Capital PPS Final Rule; *see also* 56 Fed. Reg. 43358 at 43387 (Aug. 30, 1991) (Prospective Payment System for Inpatient Hospital Capital-Related Costs – Final Rule). ("*Comment*: Several commenters questioned the treatment of transfers in determining the hospital-specific rate. Some commenters suggested that transfer should not be included in the discharge count because payment is not made for all transfers on a per discharge basis. One commenter suggested that each transfer case should be counted as a fraction based on the amount paid for the transfer case as a portion of the full case payment. Others believed that including transfers in the case-mix index would distort the hospital-specific rate because transfer cases tend to have a higher DRG weight. *Response*: We agree with the commenters that the treatment of transfers in the discharge count is problematic. To the extent a transfer is paid on a per diem basis, including the transfer in the discharge count will understate the hospital-specific rate. If the transfer were not counted at all, as suggested by some commenters, the hospital-specific rate would be overstated. In contrast, there is no distortion in the hospital-specific rate if the transfer is paid at the full DRG rate. Since some transfers are paid on a per diem basis and other transfers are paid at the full DRG amount, either the total include or the total exclusion of transfers will distort the hospital-specific rate unless the costs of all transfer cases are removed from the base period costs. We do not believe that it is administratively feasible to remove the costs associated with transfer cases. Instead, to account for transfers, as recommended by one commenter, we are adopting and adjustment to the discharge count used to calculation the hospital-specific rate. [. . . .].)

[76] *St. Francis* at 298, citing *Regions Hospital v. Shalala*, 522 U.S. 448, 462, 118 S.Ct. 909, 139 L.Ed.2d 895 (1998).

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 32

Capital PPS Final Rule in 1991, thus setting a possible precent for making such a change.[77] Finally, I believe that the Board jurisdictional statute, 42 U.S.C. § 1395oo, should be read broadly to support the "strong presumption that Congress intends judicial review of administrative action."[78]

In conclusion, the Providers should be afforded the due process of proving to the Board that the 1981 discharge data were indeed flawed, leading to understated amounts in the Federal Fiscal Years at issue.

9/27/2024

X Nicole E. Musgrave
_____
Nicole E. Musgrave, Esq.
Board Member
Signed by: Nicole Musgrave-burdette -A

---

[77] 56 Fed. Reg. 43358, 43386 (Aug. 30, 1991)..
[78] *Bowen v. Academy of Family Physicians*, 476 U.S. 667, 670 (1986).

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 33

## APPENDIX A
### Jurisdictional Challenges and Responses; Cases at Issue

On September 8, 2023, the Medicare Contractor filed a challenge to the following seventy-seven (75) cases which all share a common lead Medicare Contractor, WPS Government Health Administrators (J-8):

| | |
|---|---|
| **18-1646G** | Hall Render CY 2015 Understated Standardized Amount Predicate Fact Group I |
| **18-1676GC** | Indiana University CY 2015 Understated Standardized Amount Predicate Fact CIRP Group |
| **18-1693GC** | Community Healthcare CY 2016 Understated Standard. Amt. Predicate Fact CIRP Group |
| **18-1711GC** | Comty. Health Netwk CY 2015 Unde.rstated Stand. Amt. Pred Fact Grp for Settled C/Rs CIRP |
| **18-1713GC** | Franciscan Alliance CY 2015 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-0026GC** | Spectrum Health CY 2016 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-0461GC** | Franciscan Alliance CY 2014 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-0580GC** | McLaren Health CY 2015 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-0588GC** | Beacon Health System FFY 2019 Understated Standardized Amt. Predicate Fact CIRP Group |
| **19-0589GC** | Community Healthcare FFY 2019 Understated Standard. Amt. Predicate Fact CIRP Group |
| **19-0897GC** | Community Health Network FFY 2019 Understated Standard. Amt. Predicate Fact CIRP Grp |
| **19-0971GC** | IU Health FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-0987GC** | Franciscan Alliance FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-1015GC** | McLaren Health FFY 2019 Understated Standardized Amt. Pred. Fact CIRP Group |
| **19-1065GC** | Parkview Health FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-1130GC** | Spectrum Health FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-1238GC** | Community Health Network CY 2016 Understated Standard. Base Amt. Pred. Fact CIRP Grp. |
| **19-1661G** | Hall Render FFY 2019 Understated Standardized Amount Predicate Fact Group I Group |
| **19-1975GC** | Beacon Health CY 2015 1983 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-2556GC** | Ascension Health CY 2017 1983 Understated Standardized Amt. Predicate Fact CIRP Group |
| **19-2590GC** | Spectrum Health CY 2017 1983 Understated Standardized Amt. Predicate Fact CIRP Group |
| **20-0630GC** | Community Healthcare FFY 2020 Understated Standardized Amount CIRP Group |
| **20-0633GC** | Beacon Health FFY 2020 Understated Standardized Amount CIRP Group |
| **20-0649GC** | IU Health FFY 2020 Understated Standardized Amount CIRP Group |
| **20-0688GC** | Spectrum Health FFY 2020 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-0707GC** | Parkview Health CY 2015 1983 Understated Standardized Amt. Predicate Fact CIRP Group |
| **20-0758GC** | Franciscan Alliance FFY 2020 Understated Standardized Amt. Predicated Fact CIRP Group |
| **20-0773GC** | Parkview Health FFY 2020 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-0890GC** | McLaren Health FFY 2020 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-0916GC** | Community Health Network FFY 2020 Understated Standard. Amt. Predicate Fact CIRP Grp. |
| **20-1090G** | Hall Render FFY 2020 1983 Understated Standardized Amount Group I Group |
| **20-1425GC** | Community Healthcare Systems (IN) CY 2017 1983 Understated Standard. Amt. CIRP Group |
| **20-1552GC** | McLaren Health CY 2016 1983 Understated Standardized Amount CIRP Group |
| **20-1899GC** | McLaren Health CY 2017 1983 Understated Standardized Amt. Predicate Fact CIRP Group |
| **21-0473GC** | Beacon Health FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0481GC** | Community Health Network FFY 2021 Understated Standard. Amt. Predicate Fact CIRP Grp. |

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 34

| | |
|---|---|
| **21-0482GC** | Community Healthcare FFY 2021 Understated Standardized Amt. Predicate Fact CIRP Group |
| **21-0483GC** | Deaconess Health FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0492GC** | IU Health FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0549GC** | Franciscan Alliance FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0568GC** | Parkview Health FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0622GC** | Spectrum Health FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0936GC** | McLaren Health FFY 2021 1983 Understated Standardized Amt. Predicate Fact CIRP Group |
| **21-1233GC** | IU Health CY 2016 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-1342GC** | IU Health CY 2017 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0092GC** | Parkview Health CYs 2016- 2017 Understated Standardized Amt. Predicate Fact CIRP Group |
| **22-0371GC** | Beacon Health FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0380GC** | Community Health Network FFY 2022 Understated Standard. Amt. Predicate Fact CIRP Grp. |
| **22-0382GC** | Deaconess Health FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0385GC** | Parkview Health FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0402GC** | IU Health FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0409GC** | Spectrum Health FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0414GC** | Franciscan Alliance FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0511GC** | Community Healthcare FFY 2022 Understated Standardized Amt. Predicate Fact CIRP Group |
| **22-0516GC** | Community Health Network CY 2017 Understated Standard. Amt. Predicate Fact CIRP Grp. |
| **22-0535GC** | McLaren Health FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0629GC** | Franciscan Alliance CY 2017 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0653GC** | Ascension Health FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-1234GC** | Community Healthcare CY 2018 Understated Standardized Amt. Predicate Fact CIRP Group |
| **22-1345G** | Hall Render CY 2017 Understated Standardized Amount Predicate Fact Group |
| **23-0442GC** | Community Health Network FFY 2023 Understated Standard. Amt. Predicate Fact CIRP Grp. |
| **23-0451GC** | IU Health FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0453GC** | Beacon Health FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0455GC** | Community Healthcare FFY 2023 Understated Standardized Amt. Predicate Fact CIRP Group |
| **23-0462GC** | Parkview Health FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0489GC** | Deaconess Health FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0537GC** | Ascension Health FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0546GC** | Franciscan Alliance FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0735G** | Hall Render FFY 2023 Understated Standardized Amount Predicate Fact Group |
| **23-0737GC** | McLaren Health FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0747GC** | Beacon Health CY 2018 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0914G** | Hall Render CY 2018 Understated Standardized Amount Predicate Fact Group |
| **23-0964GC** | Franciscan Alliance CY 2018 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0993GC** | Community Health Network CY 2018 Understated Standard. Amt. Predicate Fact CIRP Grp. |
| **23-1052GC** | Community Healthcare CY 2019 Understated Standardized Amt. Predicate Fact CIRP Group |

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 35

On September 11, 2023, the Medicare Contractor filed a challenge to the following thirty-six (36) cases which all share a common lead Medicare Contractor, WPS Government Health Administrators (J-5):

| | |
|---|---|
| **19-0605GC** | Mercy Health CY 2015 1983 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-1016GC** | Methodist Health System FFY 2019 Understated Standardized Amt. Pred. Fact CIRP Group |
| **19-1199GC** | UnityPoint Health CY 2015 1983 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-1486GC** | Truman Med Ctr FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-1487GC** | Mercy FFY 2019 Understated Standardized Amount CIRP Group |
| **19-1734GC** | UnityPoint Health FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-2218G** | Hall Render CY 2017 1983 Understated Standardized Amount Predicate Fact Group |
| **19-2414GC** | UnityPoint Health CY 2016 1983 Understated Standard. Amt. Predicate Fact CIRP Group |
| **20-0132G** | Hall Render CY 2016 1983 Understated Standardized Amount Predicate Fact Group |
| **20-0825GC** | Mercy FFY 2020 1983 Understated Standardized Amount CIRP Group |
| **20-0888GC** | Truman Med Ctr FFY 2020 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-0905GC** | UnityPoint Health FFY 2020 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-0936GC** | Methodist Health System FFY 2020 Understated Standard. Amt. Predicate Fact CIRP Group |
| **20-1607GC** | Mercy CY 2017 1983 Understated Standardized Amount CIRP Group |
| **20-1902GC** | Truman Med Ctr CY 2017 1983 Understated Standard. Amt. Predicate Fact CIRP Group |
| **20-2003GC** | UnityPoint Health CY 2017 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0502GC** | Mercy FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0567GC** | UnityPoint Health FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0569GC** | Methodist Health System FFY 2021 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-0623GC** | Truman Med Ctr FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0676GC** | West TN Health FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0708GC** | Ascension Health FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0783G** | Hall Render FFY 2021 Understated Standardized Amount Predicate Fact Group I |
| **22-0408GC** | Methodist Health System FFY 2022 Understated Standard. Amt. Predicate Fact CIRP Group |
| **22-0624GC** | UnityPoint Health FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0670GC** | West TN Health FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0720GC** | Truman Med Ctr FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0744GC** | Mercy FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0814GC** | LCMC Health CY 2017 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-1213GC** | UnityPoint Health CY 2018 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0456GC** | Methodist Health System FFY 2023 Understated Standard. Amt. Predicate Fact CIRP Group |
| **23-0607GC** | UnityPoint Health FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0643GC** | West TN Health FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0649GC** | Mercy FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0868GC** | Truman Med Ctr FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0952GC** | Truman Med Ctr CYs 2018- 2019 Understated Standard. Amt. Predicate Fact CIRP Group |

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 36

On September 13, 2023, the Medicare Contractor filed a challenge to the following sixty-seven (64) cases which all share a common lead Medicare Contractor, National Government Services, Inc. (J-6):

| | |
|---|---|
| **18-1626GC** | Ascension Health CY 2016 Understated Standardized Amount Predicate Fact CIRP Group |
| **18-1730GC** | Ascension Health CY 2015 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-0155GC** | Advocate Aurora Health CY 2014 Understated Standardized Amount CIRP Group |
| **19-0213GC** | Edward-Elmhurst Health CY 2015 Understated Standard. Amt. Predicate Fact CIRP Group |
| **19-0892GC** | Edward-Elmhurst Health FFY 2019 Understated Standard. Amt. Predicate Fact CIRP Group |
| **19-0967GC** | Aspirus Health System FFY 2019 Understated Standard. Amt. Predicate Fact CIRP Group |
| **19-0972GC** | Froedtert Health FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-1097GC** | ProHealth Care FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-1115G** | Hall Render FFY 2019 Understated Standardized Amount Predicate Fact Group IV |
| **19-1242GC** | Advocate Aurora Health CY 2013 Understated Standardized Amount CIRP Group |
| **19-1249GC** | Froedtert Health CY 2016 1983 Understated Standard. Amt. Predicate Fact CIRP Group |
| **19-1264GC** | Advocate Aurora Health CY 2015 1983 Understated Standard. Amt. Pred. Fact CIRP Grp. |
| **19-1460GC** | Advocate Aurora Health CY 2012 1983 Understated Standard. Amt. Pred. Fact CIRP Grp. |
| **19-1505GC** | Rush FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-1506GC** | Southern Illinois FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-1664GC** | Ascension Health FFY 2019 Understated Standardized Amount CIRP Group |
| **19-1705GC** | Advocate Aurora Health FFY 2019 Understated Standard. Amt. Predicate Fact CIRP Group |
| **19-2360GC** | Southern Illinois CY 2016 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-0091GC** | Edward-Elmhurst Health CY 2016 1983 Understated Standard. Amt. Pred. Fact CIRP Grp. |
| **20-0428GC** | Southern Illinois CY 2017 1983 Understated Standard. Amt. Predicate Fact CIRP Group |
| **20-0493GC** | Advocate Aurora Health CY 2016 1983 Understated Standard. Amt. Pred. Fact CIRP Group |
| **20-0645GC** | Ascension Health FFY 2020 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-0689GC** | Southern Illinois FFY 2020 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-0714G** | Hall Render CY 2012- 2013 1983 Understated Standard. Amt. Predicate Fact Group II |
| **20-0753GC** | Froedtert Health FFY 2020 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-0859GC** | Edward-Elmhurst Health FFY 2020 1983 Understated Standardized Amount CIRP Group |
| **20-0860GC** | Advocate Aurora Health FFY 2020 1983 Understated Standardized Amount CIRP Group |
| **20-1044G** | Hall Render CY 2014 Understated Standardized Amount Predicate Fact II Group |
| **20-1056GC** | Rush FFY 2020 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-1059GC** | ProHealth Care FFY 2020 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-1094GC** | Aspirus Health System FFY 2020 Understated Standard. Amt. Predicate Fact CIRP Group |
| **20-1756GC** | Ascension Health CY 2018 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-1767GC** | Froedtert Health CY 2017 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-1858G** | Hall Render CY 2017 1983 Understated Standardized Amount Predicate Fact Group |
| **20-1982GC** | Edward-Elmhurst Health CY 2017 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-0485GC** | Northshore-Edward-Elmhurst Health FFY 2021 Understated Standard. Amt. Pred. Fact CIRP |
| **21-0552GC** | Southern Illinois FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0556GC** | Rush FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0686GC** | ProHealth Care FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 37

| | |
|---|---|
| **21-0689GC** | Froedtert Health FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0717GC** | Aspirus Health System FFY 2021 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-0950GC** | Advocate Aurora Health FFY 2021 1983 Understated Standard. Amt. Pred. Fact CIRP Group |
| **21-1154GC** | Southern Illinois CY 2018 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-1325G** | Hall Render CY 2015 Understated Standardized Amount Predicate Fact Group |
| **21-1706GC** | Advocate Aurora Health CY 2018 Understated Standard. Amt. Predicate Fact CIRP Group |
| **22-0148GC** | Edward-Elmhurst Health CY 2018 Understated Standard. Amt. Predicate Fact CIRP Group |
| **22-0269GC** | Southern Illinois CY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0384GC** | Froedtert Health FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0403GC** | NorthShore-Edward-Elmhurst Health FFY2022 Understated Standard. Amt. Pred. Fact CIRP |
| **22-0441GC** | Southern Illinois FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0510GC** | Rush FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0533GC** | Aspirus Health System FFY 2022 Understated Standard. Amt. Predicate Fact CIRP Group |
| **22-0534GC** | ProHealth Care FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0563GC** | Advocate Aurora Health FFY 2022 Understated Standard. Amt. Predicate Fact CIRP Group |
| **22-0723GC** | Froedtert Health CY 2018 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-1433GC** | Froedtert Health CY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0414GC** | NorthShore FFY 2020 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0463GC** | Southern Illinois FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0490GC** | NorthShore EdwardElmhurst FFY 2023 Understated Standard. Amt. Predicate Fact CIRP Grp |
| **23-0493GC** | Aspirus Health System FFY 2023 Understated Standard. Amt. Predicate Fact CIRP Group |
| **23-0494GC** | Froedtert Health FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0509GC** | ProHealth Care FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0736GC** | Rush FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0746GC** | Advocate Aurora Health FFY 2023 Understated Standard. Amt. Predicate Fact CIRP Group |

On September 14, 2023, the Medicare Contractor filed a challenge to the following seven (6) cases which all share a common lead Medicare Contractor, National Government Services, Inc. (J-K):

| | |
|---|---|
| **19-1482GC** | UMass Memorial Health FFY 2019 Understated Standard. Amt. Predicate Fact CIRP Group |
| **20-0197GC** | UMass Mem'l Health CYs 2015 – 2016 1983 Understated Standard. Amt. Pred. Fact CIRP |
| **20-0937GC** | UMass Memorial Health FFY 2020 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-0621GC** | UMass Memorial Health FFY 2021 Understated Standard. Amt. Predicate Fact CIRP Group |
| **22-0621GC** | UMass Memorial Health FFY 2022 Understated Standard. Amt. Predicate Fact CIRP Group |
| **23-0642GC** | UMass Memorial Health FFY 2023 Understated Standard. Amt. Predicate Fact CIRP Group |

On September 15, 2023, the Medicare Contractor filed a challenge to the following twenty-five (25) cases which all share a common lead Medicare Contractor, Palmetto GBA (J-J):

| | |
|---|---|
| **19-0984GC** | Huntsville Hosp. System FFY 2019 Understated Standard. Amt. Predicate Fact CIRP Group |
| **20-0195GC** | Huntsville Hosp. System CY 2016 1983 Understated Standard. Amt. Pred. Fact CIRP Group |
| **20-0635GC** | Ballad Health FFY 2020 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-0833GC** | West TN Health FFY 2020 1983 Understated Standardized Amount CIRP Group |

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 38

| | |
|---|---|
| **20-0907GC** | Huntsville Hosp. System FFY 2020 Understated Standard. Amt. Predicate Fact CIRP Group |
| **20-1049GC** | Maury Reg'l Healthcare FFY 2020 1983 Understated Standard. Amt. Pred. Fact CIRP Grp. |
| **20-1058GC** | RMC Health System FFY 2020 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-0127G** | Hall Render CY 2016 Understated Standardized Amount Predicate Fact Group |
| **21-0446GC** | Huntsville Hosp. System FFY 2021 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-0464GC** | Ballad Health FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0664GC** | Huntsville Hosp. System CY 2017 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-0702GC** | RMC Health System FFY 2021 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-0931GC** | East Alabama Health FFY 2021 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-0946GC** | Maury Regional FFY 2021 1983 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-1421GC** | RMC Health System CY 2017 Understated Standard. Amt. Predicate Fact CIRP Group |
| **22-0381GC** | Ballad Health FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0469GC** | East Alabama Health FFY 2022 Understated Standard. Amt. Predicate Fact CIRP Group |
| **22-0509GC** | Huntsville Hosp. System FFY 2022 Understated Standard. Amt. Predicate Fact CIRP Group |
| **22-0564GC** | Maury Regional FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0699GC** | Huntsville Hosp. System CY 2018 Understated Standard. Amt. Predicate Fact CIRP Group |
| **23-0443GC** | Ballad Health FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0445GC** | East Alabama Health FFY 2023 Understated Standard. Amt. Predicate Fact CIRP Group |
| **23-0452GC** | Huntsville Hosp. System FFY 2023 Understated Standard. Amt. Predicate Fact CIRP Group |
| **23-0594G** | Hall Render FFY 2023 Understated Standardized Amount Predicate Fact Group |
| **23-0710GC** | Maury Regional FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-1195GC** | Huntsville Hosp. System CY 2019 Understated Standard. Amt. Predicate Fact CIRP Group |

On September 19, 2023, the Medicare Contractor filed a challenge to the following fifty (50) cases which all share a common lead Medicare Contractor, Palmetto GBA c/o National Government Services, Inc. (J-M):

| | |
|---|---|
| **19-0281GC** | Prisma Health CY 2014 Understated Standardized Base Rate Predicate Fact CIRP Group |
| **19-0282GC** | Prisma Health CY 2012 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-1131GC** | Vidant Health FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-1205GC** | Prisma Health CY 2015 1983 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-1245GC** | Vidant Health CY 2015 1983 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-1276GC** | Prisma Health CY 2013 1983 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-1423GC** | Cabell Huntington FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-1425GC** | Prisma Health FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-1438GC** | Thomas Health FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-2509GC** | Thomas Health CY 2015 1983 Understated Standard. Amt. Predicate Fact CIRP Group |
| **19-2585GC** | Roper St. Francis CY 2013 1983 Understated Standard. Amt. Predicate Fact CIRP Group |
| **19-2589GC** | Roper St. Francis CY 2014 1983 Understated Standard. Amt. Predicate Fact CIRP Group |
| **19-2698G** | Hall Render CY 2015 Understated Standardized Amount Predicate Fact Group |
| **20-0013GC** | Roper St. Francis CY 2015 1983 Understated Standard. Amt. Predicate Fact CIRP Group |
| **20-0918GC** | Prisma Health FFY 2020 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-0933GC** | Thomas Health FFY 2020 Understated Standardized Amount Predicate Fact CIRP Group |

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 39

| | |
|---|---|
| **20-0959GC** | Roper St. Francis FFY 2020 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-0960GC** | Vidant Health FFY 2020 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-1048GC** | Cabell Huntington FFY 2020 1983 Understated Standardized Amount CIRP Group |
| **20-1269GC** | Cabell Huntington CY 2014 1983 Understated Standardized Amount Appeal CIRP Group |
| **20-2079GC** | Cone Health CY 2015 1983 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0345GC** | Thomas Health CY 2016 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0480GC** | Cone Health FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0633GC** | Vidant Health FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0675GC** | Roper St. Francis FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0744GC** | Cone Health CY 2016 1983 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0940GC** | Thomas Health FFY 2021 1983 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-1006GC** | Cabell Huntington FFY 2021 1983 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-1014GC** | Prisma Health FFY 2021 1983 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-1440GC** | Vidant Health CY 2016 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-1476GC** | Prisma Health CY 2016 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-1512GC** | Roper St. Francis CY 2016 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0232GC** | Prisma Health CY 2017 1983 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0319GC** | Thomas Health CY 2017 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0401GC** | Vidant Health FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0514GC** | Thomas Health FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0565GC** | Prisma Health FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0623GC** | Cone Health FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0688GC** | Roper St. Francis FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0715GC** | Cabell Huntington FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-1183GC** | Cone Health CY 2017 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0339GC** | Thomas Health CY 2018 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0491GC** | Cone Health FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0547GC** | Thomas Health FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0655GC** | Prisma Health FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0662GC** | Mountain Health Network FFY 2023 Understated Standard. Amt. Pred. Fact CIRP Group |
| **23-0744GC** | Vidant Health FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0781GC** | Roper St. Francis FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0913GC** | Cone Health CY 2018 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-1056G** | Hall Render CY 2018 Understated Standardized Amount Predicate Fact Group |

On October 11, 2023, the Medicare Contractor filed a challenge to the following fifty-seven (57) cases which all share a common lead Medicare Contractor, CGS Administrators, LLC (J-15):

| | |
|---|---|
| **18-1648GC** | Premier Health Partners CYs 2014-2015 Understated Standard. Amt. Pred. Fact CIRP Grp. |
| **19-0030G** | Hall Render CY 2016 Understated Standardized Amount Predicate Fact Group |
| **19-0274GC** | ARH (KY) CY 2016 Understated Standardized Base Rate Predicate Fact CIRP Group |
| **19-0287G** | Hall Render CY 2014 Understated Standardized Amount Predicate Fact Group |

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 40

| | |
|---|---|
| **19-0585GC** | Baptist Healthcare CY 2016 Understated Standardized Amount Predicate Fact CIRP |
| **19-0586GC** | ARH (KY) FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-0616GC** | Premier Health Partners CY 2016 1983 Understated Standard. Amt. Pred. Fact CIRP Group |
| **19-0666GC** | St. Elizabeth Healthcare CY 2016 Understated Standard. Amt. Predicate Fact CIRP Group |
| **19-1067GC** | St. Elizabeth Healthcare FFY 2019 Understated Standard. Amt. Predicate Fact CIRP Group |
| **19-1069GC** | Premier Health Partners FFY 2019 Understated Standard. Amt. Predicate Fact CIRP Group |
| **19-1072GC** | St. Elizabeth Healthcare CY 2015 Understated Standard. Amt. Predicate Fact CIRP Group |
| **19-1129G** | Hall Render CY 2010-2011 1983 Understated Standardized Amount Predicate Fact Group |
| **19-1426GC** | Baptist Healthcare KY FFY 2019 Understated Standard. Amt. Predicate Fact CIRP Group |
| **19-1488GC** | TriHealth FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-1804G** | Hall Render FFY 2019 Understated Standardized Amount Predicate Fact III Group |
| **19-2551GC** | Baptist Healthcare KY CY 2017 1983 Understated Standard. Amt. Pred. Fact CIRP Group |
| **19-2733GC** | ARH (KY) CY 2017 1983 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-0761GC** | Premier Health Partners FFY 2020 Understated Standard. Amt. Predicate Fact CIRP Group |
| **20-0762GC** | St. Elizabeth Healthcare FFY 2020 1983 Understated Standardized Amount CIRP Group |
| **20-0889GC** | TriHealth FFY 2020 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-0919GC** | ARH (KY) FFY 2020 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-1096G** | Hall Render FFY 2020 1983 Understated Standardized Amount II Group |
| **20-1583GC** | St. Elizabeth Healthcare CY 2017 1983 Understated Standardized Amount CIRP Group |
| **20-1744GC** | Premier Health Partners CY 2017 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-0126G** | Hall Render CY 2018 Understated Standardized Amount Predicate Fact Group |
| **21-0166GC** | St. Elizabeth Healthcare CY 2018 1983 Understated Standard. Amt. Pred. Fact CIRP Group |
| **21-0619GC** | St. Elizabeth Healthcare FFY 2021 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-0629GC** | Baptist Healthcare KY FFY 2021 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-0640GC** | Premier Health Partners FFY 2021 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-0739GC** | Aultman Health FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0816G** | Hall Render FFY 2021 Understated Standardized Amount Predicate Fact Group II |
| **21-0938GC** | TriHealth FFY 2021 1983 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-1008GC** | ARH (KY) FFY 2021 1983 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-1009G** | Hall Render FFY 2021 1983 Understated Standardized Amount Predicate Fact Group III |
| **21-1283GC** | Baptist Healthcare KY CY 2018 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-1624G** | Hall Render CY 2017 Understated Standardized Amount Predicate Fact Group |
| **22-0152GC** | Premier Health Partners CY 2018 Understated Standard. Amt. Predicate Fact CIRP Group |
| **22-0370GC** | Aultman Health FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0386GC** | St. Elizabeth Healthcare FFY 2022 Understated Standard. Amt. Predicate Fact CIRP Group |
| **22-0387GC** | TriHealth FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0399GC** | Premier Health Partners FFY 2022 Understated Standard. Amt. Predicate Fact CIRP Group |
| **22-0405GC** | ARH (KY) FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0454G** | Hall Render FFY 2022 Understated Standardized Amount Predicate Fact Group I |
| **22-0622GC** | Baptist Healthcare KY FFY 2022 Understated Standard. Amt. Predicate Fact CIRP Group |
| **22-0630G** | Hall Render CY 2018 Understated Standardized Amount Predicate Fact Group |

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 41

| | |
|---|---|
| **22-0685G** | Hall Render FFY 2022 Understated Standardized Amount Predicate Fact Group II |
| **22-1141GC** | Baptist Healthcare KY CY 2019 Understated Standard. Amt. Predicate Fact CIRP Group |
| **22-1288GC** | Aultman Health CY 2018 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-1510GC** | Baptist Healthcare KY CY 2020 Understated Standard. Amt. Predicate Fact CIRP Group |
| **23-0387G** | Hall Render CY 2019 Understated Standardized Amount Predicate Fact Group |
| **23-0430GC** | Aultman Health FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0444GC** | Baptist Healthcare KY FFY 2023 Understated Standard. Amt. Predicate Fact CIRP Group |
| **23-0464GC** | St. Elizabeth Healthcare FFY 2023 Understated Standard. Amt. Predicate Fact CIRP Group |
| **23-0508GC** | Premier Health Partners FFY 2023 Understated Standard. Amt. Predicate Fact CIRP Group |
| **23-0684GC** | TriHealth CY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0754G** | Hall Render FFY 2023 Understated Standardized Amount Predicate Fact Group |
| **23-0879GC** | ARH (KY) FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |

On October 31, 2023, the Medicare Contractor filed a challenge to the following seventy (70) cases which all share a common lead Medicare Contractor, Novitas Solutions, Inc. (J-H):

| | |
|---|---|
| **18-1691G** | Hall Render CY 2015 Understated Standardized Amount Predicate Fact Group II |
| **18-1696GC** | Ascension Health CY 2012 Understated Standardized Amount Predicate Fact CIRP Group |
| **18-1772GC** | Ascension CY 2011 Understated Standardized Amount Predicate Fact CIRP Group |
| **18-1775GC** | Ascension Health CY 2013 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-0025GC** | Baptist Health – Arkansas CY 2014 Understated Standard. Amt. Predicate Fact CIRP Group |
| **19-0031GC** | Ascension Health CY 2014 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-0232GC** | North Mississippi Health CY 2014 Understated Standard. Amt. Predicate Fact CIRP Group |
| **19-0240GC** | Forrest Health CY 2015 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-0411G** | Hall Render CY 2013 Understated Standardized Amount Predicate Fact Group |
| **19-0414GC** | Integris Health CY 2009 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-0494GC** | North Mississippi Health CY 2015 Understated Standard. Amt. Predicate Fact CIRP Group |
| **19-0576GC** | Univ of Colorado Health CY 2015 1983 Understated Standard. Amt. Pred. Fact CIRP Group |
| **19-0612GC** | Univ of Colorado Health CY 2016 1983 Understated Standard. Amt. Pred. Fact CIRP Group |
| **19-0974GC** | Baptist Health – Arkansas FFY 2019 Understated Standard. Amt. Pred. Fact CIRP Group |
| **19-0988GC** | Mercy Health CY 2016 1983 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-1010GC** | Integris Health FFY 2019 Understated Standardized Amount Pred. Fact CIRP Group |
| **19-1012GC** | North Mississippi Health FFY 2019 Understated Standard. Amt. Pred. Fact CIRP Group |
| **19-1093GC** | Integris Health FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-1163GC** | LCMC Health FFY 2019 Understated Standardized Amount Pred. Fact CIRP Group |
| **19-1279GC** | Baptist Health – Arkansas CY 2015 1983 Understated Standard. Amt. Pred. Fact CIRP Grp. |
| **19-1459GC** | Univ of Colorado Health FFY 2019 Understated Standard. Amt. Predicate Fact CIRP Group |
| **19-1532GC** | LCMC Health CY 2015 1983 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-1538GC** | North Mississippi Health CY 2016 1983 Understated Standard. Amt. Pred. Fact CIRP Group |
| **19-1737G** | Hall Render FFY 2019 Understated Standardized Amount Predicate Fact II Group |
| **20-0359GC** | Baptist Health – Arkansas CY 2016 1983 Understated Standard. Amt. Pred. Fact CIRP Grp. |
| **20-0429GC** | Integris Health CY 2010 1983 Understated Standard. Amt. Predicate Fact CIRP Group |

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 42

| | |
|---|---|
| **20-0699GC** | Integris Health CY 2017 1983 Understated Standard. Amt. Predicate Fact CIRP Group |
| **20-0767GC** | North Mississippi Health FFY 2020 Understated Standard. Amt. Predicate Fact CIRP Group |
| **20-0862GC** | Univ of Colorado Health FFY 2020 1983 Understated Standardized Amount CIRP Group |
| **20-0882GC** | LCMC Health FFY 2020 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-0886GC** | Baptist Health - Arkansas FFY 2020 Understated Standard. Amt. Pred. Fact CIRP Group |
| **20-1043GC** | St. Bernards Healthcare FFY 2020 1983 Understated Standardized Amount CIRP Group |
| **20-1061GC** | Integris Health FFY 2020 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-1127G** | Hall Render FFY 2020 1983 Understated Standardized Amount Predicate Fact Group III |
| **20-1420GC** | North Mississippi Health CY 2017 1983 Understated Standardized Amount CIRP Group |
| **20-1769GC** | Integris Health CY 2012 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-1770GC** | Integris Health CY 2015 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-2028GC** | Good Shepherd Health CY 2016 1983 Understated Standard. Amt. Pred. Fact CIRP Group |
| **21-0467GC** | Baptist Health - Arkansas FFY 2021 Understated Standard. Amt. Pred. Fact CIRP Group |
| **21-0489GC** | Integris Health FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0494GC** | LCMC Health FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0537GC** | St. Bernards Healthcare FFY 2021 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-0551GC** | Integris Health CY 2018 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0628GC** | Univ of Colorado Health FFY 2021 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-0957GC** | North Mississippi Health FFY 2021 1983 Understated Standard. Amt. Pred. Fact CIRP Grp. |
| **21-1027GC** | Forrest Health CY 2016 1983 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-1152GC** | Integris Health CY 2011 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-1161GC** | Forrest Health CYs 2017-2018 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-1286GC** | Mercy CY 2018 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-1459GC** | Baptist Health - Arkansas CY 2017 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-1507GC** | Univ of Colorado Health CY 2017 Understated Standard. Amt. Predicate Fact CIRP Group |
| **22-0227GC** | Baptist Health - Arkansas CY 2018 1983 Understated Standard. Amt. Pred. Fact CIRP Grp. |
| **22-0325GC** | Univ of Colorado Health CY 2018 Understated Standard. Amt. Predicate Fact CIRP Group |
| **22-0379GC** | Baptist Health - Arkansas FFY 2022 Understated Standard. Amt. Pred. Fact CIRP Group |
| **22-0443GC** | Integris Health FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0508GC** | North Mississippi Health FFY 2022 Understated Standard. Amt. Predicate Fact CIRP Group |
| **22-0512GC** | LCMC Health FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0532GC** | St. Bernards Healthcare FFY 2022 Understated Standard. Amt. Predicate Fact CIRP Group |
| **22-0640GC** | UCHealth FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0713G** | Hall Render FFY 2022 Understated Standardized Amount Predicate Fact Group III |
| **22-1471GC** | Integris Health CY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0178GC** | Univ of Colorado Health CY 2019 Understated Standard. Amt. Predicate Fact CIRP Group |
| **23-0210GC** | LCMC Health CYs 2015-2016 Understated Standard. Amt. Predicate Fact CIRP Group |
| **23-0450GC** | Integris Health FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0454GC** | St. Bernards Healthcare FFY 2023 Understated Standard. Amt. Predicate Fact CIRP Group |
| **23-0492GC** | Baptist Health - Arkansas FFY 2023 Understated Standard. Amt. Pred. Fact CIRP Group |
| **23-0702GC** | Univ of Colorado Health FFY 2023 Understated Standard. Amt. Predicate Fact CIRP Group |

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 43

| | |
|---|---|
| **23-0709GC** | North Mississippi Health FFY 2023 Understated Standard. Amt. Predicate Fact CIRP Group |
| **23-0882GC** | LCMC Health FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0912GC** | North Mississippi Health CY 2018 Understated Standard. Amt. Predicate Fact CIRP Group |
| **24-0057GC** | Univ of Colorado Health CY 2020 Understated Standard. Amt. Predicate Fact CIRP Group |

On December 13 and 14, 2023, the Medicare Contractor filed a challenge to the following fifty-four (54) cases which all share a common lead Medicare Contractor, Novitas Solutions, Inc. (J-H):

| | |
|---|---|
| **18-1673GC** | Penn Medicine CY 2015 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-0169GC** | UPMC CY 2016 Understate Standardized Amount Predicate Fact CIRP Group |
| **19-0171GC** | UPMC CY 2015 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-0493GC** | Einstein Healthcare Netwo CY 2016 Understated Standard. Amt. Predicate Fact CIRP Grp. |
| **19-0587GC** | Bayhealth FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-0889GC** | Einstein Healthcare FFY 2019 Understated Standardized Amount Predicate Fact CIRP Grp. |
| **19-0968GC** | Forrest Health FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-1009GC** | Lehigh Valley Health CY 2016 1983 Understated Standard. Amt. Predicate Fact CIRP Grp. |
| **19-1020GC** | Lehigh Valley Health FFY 2019 Understated Standardized Amt. Pred. Fact CIRP Group |
| **19-1066GC** | Univ. of PA Health System FFY 2019 Understated Standard. Amt. Predicate Fact CIRP Grp. |
| **19-1437GC** | Temple Univ Health FFY 2017 & FFY 2019 Understated Standard. Amt. Pred. Fact CIRP Gp. |
| **19-1440GC** | Penn State Health FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-1713GC** | UPMC FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-1869GC** | Einstein Healthcare CY 2017 1983 Understated Standard. Amt. Predicate Fact CIRP Grp. |
| **19-2463GC** | UPMC CY 2017 1983 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-2699GC** | Univ. of PA Health System CY 2016 1983 Understated Standard. Amt. Pred. Fact CIRP Grp |
| **20-0638GC** | Lehigh Valley Health FFY 2020 1983 Understated Standardized Amount CIRP Group |
| **20-0657GC** | Penn State Health FFY 2020 Understated Standardized Amount CIRP Group |
| **20-0716GC** | Bayhealth FFY 2020 1983 Understated Standardized Amount CIRP Group |
| **20-0743GC** | Einstein Healthcare FFY 2020 Understated Standard. Amt. Predicate Fact CIRP Group |
| **20-0754GC** | Univ. of PA Health System FFY 2020 Understated Standard. Amt. Predicate Fact CIRP Grp |
| **20-0858GC** | Temple Univ Health FFY 2020 1983 Understated Standardized Amount CIRP Group |
| **20-0929GC** | UPMC FFY 2020 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-1349GC** | Einstein Healthcare CY 2018 1983 Understated Standardized Amount CIRP Group |
| **20-1785GC** | Lehigh Valley Health CY 2017 Understated Standard. Amt. Predicate Fact CIRP Grp |
| **20-1838GC** | Lehigh Valley Health CY 2011 Understated Standard. Amt. Predicate Fact CIRP Grp |
| **20-1949GC** | UPMC CY 2018 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-2043GC** | Lehigh Valley Health CY 2018 1983 Understated Standard. Amt. Pred. Fact CIRP Group |
| **21-0469GC** | Bayhealth FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0632GC** | Univ. of PA Health System FFY 2021 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-0665GC** | Einstein Healthcare FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0685GC** | UPMC FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 44

| | |
|---|---|
| **21-0740GC** | Penn State Health FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-1112GC** | Atlantic Health FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-1147GC** | Univ. of PA Health System CY 2017 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-1160GC** | Univ. of PA Health System CY 2018 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-1458GC** | Univ. of PA Health System CY 2019 Understated Standard. Amt. Predicate Fact CIRP Group |
| **22-0400GC** | UPMC FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0413GC** | Einstein Healthcare FFY 2022 Understated Standard. Amt. Predicate Fact CIRP Group |
| **22-0442GC** | Lehigh Valley Health FFY 2022 Understated Standard. Amt. Predicate Fact CIRP Group |
| **22-0444GC** | Univ. of PA Health System FFY 2022 Understated Standard. Amt. Predicate Fact CIRP Group |
| **22-0466GC** | Penn State Health FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0625GC** | Bayhealth FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0674GC** | Atlantic Health FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0065GC** | UPMC CY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0149GC** | Penn State Health CY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0505GC** | Univ. of PA Health System FFY 2023 Understated Standard. Amt. Predicate Fact CIRP Group |
| **23-0507GC** | Penn State Health FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0561GC** | Lehigh Valley Health FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0604GC** | Atlantic Health FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0605GC** | Bayhealth FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0651GC** | UPMC FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0742GC** | Einstein Healthcare FFY 2023 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-0496GC** | Lehigh Valley Health FFY 2021 Understated Standard. Amt. Predicate Fact CIRP Group |

On January 31, February 2, and March 4, 2024, the Medicare Contractor filed a challenge to the following three (3) cases which all share a common lead Medicare Contractor, Palmetto GBA (L-L):

| | |
|---|---|
| **19-0290GC** | Ballad Health CY 2015 1983 Understated Standard. Amt. Predicate Fact CIRP Group |
| **20-0253GC** | Ballad Health CY 2017 1983 Understated Standard. Amt. Predicate Fact CIRP Group |
| **20-0012GC** | Ballad Health CY 2016 1983 Understated Standard. Amt. Predicate Fact CIRP Group |

On April 11, 2024 the Medicare Contractor filed a challenge to the following thirty-five (35) cases which all share a common lead Medicare Contractor, Noridian Healthcare Solutions (J-F):

| | |
|---|---|
| **18-1630GC** | Sanford Health CY 2015 Understated Standard. Amt. Predicate Fact CIRP CIRP Group |
| **19-0404GC** | Sanford Health CY 2016 1983 Understated Standard. Amt. Predicate Fact CIRP Group |
| **19-0610GC** | Asante Health System CYs 2015-2016 1983 Understated Standard. Amt. Pred. Fact CIRP |
| **19-0962GC** | Asante Health System FFY 2019 Understated Standard. Amt. Predicate Fact CIRP Group |
| **19-1068GC** | Avera Health CY 2016 1983 Understated Standardized Amount Predicate Fact CIRP Grp. |
| **19-1424GC** | Sanford Health FFY 2019 Understated Standardized Amount Predicate Fact CIRP Grp. |
| **19-1610GC** | Avera Health FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 45

| | |
|---|---|
| **19-1680GC** | PeaceHealth FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-2614GC** | PeaceHealth CY 2016 1983 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-0687GC** | Avera Health CY 2017 1983 Understated Standardized Amount Predicate Fact CIRP Grp. |
| **20-0735GC** | Sanford Health FFY 2020 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-0760GC** | PeaceHealth FFY 2020 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-0808GC** | Avera Health FFY 2020 1983 Understated Standardized Amount CIRP Group |
| **20-0932GC** | Asante Health System FFY 2020 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-0533GC** | Avera Health FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0639GC** | Sanford Health FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0642GC** | PeaceHealth FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0763GC** | Asante Health System FFY 2021 Understated Standard. Amt. Predicate Fact CIRP Group |
| **21-1529GC** | Sanford Health CY 2017 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0411GC** | Sanford Health FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0513GC** | PeaceHealth FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0541GC** | Avera Health FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0542GC** | Asante Health System FFY 2022 Understated Standard. Amt. Predicate Fact CIRP Group |
| **23-0068GC** | Sanford Health CY 2018 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0260GC** | PeaceHealth CY 2018 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0496GC** | PeaceHealth FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0510GC** | Sanford Health FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0574GC** | Avera Health FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0613GC** | Asante Health System FFY 2023 Understated Standard. Amt. Predicate Fact CIRP Group |
| **23-1760GC** | PeaceHealth CY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-1793GC** | Asante Health CYs 2017-2018 Understated Standard. Amt. Predicate Fact CIRP Group |
| **24-1234GC** | Sanford Health FFY 2024 Understated Standardized Amount Predicate Fact CIRP Group |
| **24-1245GC** | Avera Health FFY 2024 Understated Standardized Amount Predicate Fact CIRP Group |
| **24-1327GC** | Asante Health System FFY 2024 Understated Standard. Amt. Predicate Fact CIRP Group |
| **24-1356GC** | PeaceHealth FFY 2024 Understated Standardized Amount Predicate Fact CIRP Group |

On April 25, 2024 the Medicare Contractor filed a challenge to the following six (6) cases which all share a common lead Medicare Contractor, Novitas Solutions, Inc. c/o GuideWell Source (J-H):

| | |
|---|---|
| **24-0998GC** | Integris Health FFY 2024 Understated Standardized Amount Predicate Fact CIRP Group |
| **24-1010GC** | Baptist Health - Arkansas CY 2019 Understated Standard. Amt. Pred. Fact CIRP Group |
| **24-1329GC** | Baptist Health - Arkansas FFY 2024 Understated Standard. Amt. Pred. Fact CIRP Group |
| **24-1393GC** | LCMC Health FFY 2024 Understated Standardized Amount Predicate Fact CIRP Group |
| **24-1441GC** | Univ of Colorado Health FFY 2024 Understated Standard. Amt. Predicate Fact CIRP Grp. |
| **24-1481GC** | North Mississippi Health FFY 2024 Understated Standard. Amt. Predicate Fact CIRP Grp. |

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 46

On May 16, and July 12, 2024 the Medicare Contractor filed a challenge to the following eleven (11) cases which all share a common lead Medicare Contractor, Palmetto GBA (J-J):

| | |
|---|---|
| **19-0623G** | Hall Render CY 2012 1983 Understated Standardized Amount Predicate Fact Group |
| **19-0745GC** | Huntsville Hospital Syste CY 2015 1983 Understated Standard. Amt. Pred. Fact CIRP Grp. |
| **19-0904GC** | Ballad Health FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-1096GC** | RMC Health System FFY 2019 Understated Standardized Amount Pred. Fact CIRP Group |
| **19-1169GC** | Huntsville Hosp. System CY 2014 Understated Standardized Amount Pred. Fact CIRP Grp. |
| **19-1491GC** | West TN Health FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0914G** | Hall Render CY 2018 Understated Standardized Amount Predicate Fact Group |
| **24-0996GC** | Huntsville Hosp. System FFY 2024 Understated Standardized Amount Pred. Fact CIRP Grp. |
| **24-1307GC** | Ballad Health FFY 2024 Understated Standardized Amount Predicate Fact CIRP Group |
| **24-1358GC** | Maury Regional FFY 2024 Understated Standardized Amount Predicate Fact CIRP Group |
| **20-0636GC** | Ballad Health CY 2018 1983 Understated Standardized Amount Predicate Fact CIRP Group |

On June 4, 2024 the Medicare Contractor filed a challenge to the following ten (10) cases which all share a common lead Medicare Contractor, First Coast Service Options, Inc. c/o GuideWell Source (J-N):

| | |
|---|---|
| **19-1011GC** | Broward Health CY 2016 1983 Understated Standard. Amt. Predicate Fact CIRP Group |
| **19-1455GC** | Broward Health FFY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **19-2172GC** | Broward Health CY 2017 1983 Understated Standard. Amt. Predicate Fact CIRP Group |
| **20-0734GC** | Broward Health FFY 2020 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-0476GC** | Broward Health FFY 2021 Understated Standardized Amount Predicate Fact CIRP Group |
| **21-1616GC** | Ascension Health CY 2019 Understated Standardized Amount Predicate Fact CIRP Group |
| **22-0445GC** | Broward Health FFY 2022 1983 Understated Standardized Amount CIRP Group |
| **22-0647GC** | Broward Health CY 2018 Understated Standardized Amount Predicate Fact CIRP Group |
| **23-0572GC** | Broward Health FFY 2023 Understated Standardized Amount Predicate Fact CIRP Group |
| **24-1290GC** | Broward Health FFY 2024 Understated Standardized Amount Predicate Fact CIRP Group |

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 47

<u>APPENDIX B</u>
**Examples of other adjustments to the standardized amount**
**that may potentially break the causal link from FFY 1984 to the fiscal years at issue**

Set forth below are examples of other adjustments to the standardized amounts that have occurred outside of the FFY 1984 and 1985 budget neutrality adjustments ("BNAs") and the "applicable percentage increases" for FFYs 1986 and forward as provided in 42 U.S.C. § 1395ww(b)(3)(B)(i). These other example raise questions about the causal link between the standardized amount rates at issue and the initial standardize amounts set for FFY 1984. Curiously, the Providers stopped their analysis at 1986 and did not carry forward their analysis for years 1987 through the particular year at issue (*e.g.*, for the lead case under Case No. 18-1646G, there are an additional 28 intervening years since the standardize amount issue is the FFY 2015 standard amount rate).

a. "Restandardization of base year costs per case used in [the] calculation of Federal rates" for both the labor and non-labor portions to reflect the survey-based wage index as discussed in the FY 1986 IPP Final Rule. 50 Fed. Reg. 35646, 35692 (Sept. 3, 1985).

b. Recalibration of DRG weights done in a budget neutral manner pursuant to 42 U.S.C. § 1395ww(d)(4)(C) at least every 4 years beginning with 1986.[79] An example of recalibration can be found in the FY 1986 IPPS Final Rule wherein the Secretary changed its methodology for calculating the DRG relative weights.[80]

---

[79] The Secretary confirmed that, beginning in 1991, these adjustments are to be made in a budget neutral manner:
> Section 1886(d)(4)(C)(iii) of the Act requires that beginning with FY 1991, reclassification and recalibration changes be made in a manner that assures that the aggregate payments are neither greater than nor less than the aggregate payments that would have been made without the changes. Although normalization is intended to achieve this effect, equating the average case weight after recalibration to the average case weight before recalibration does not necessarily achieve budget neutrality with respect to aggregate payments to hospitals because payment to hospitals is affected by factors other than average case weight. Therefore, as discussed in section II.A.4.b. of the Addendum to this final rule, we are making a budget neutrality adjustment to implement the requirement of section 1886(d)(4)(C)(iii) of the Act.

59 Fed. Reg. 45330, 45348 (Sept. 1, 1994).

[80] 50 Fed. Reg. 35646, 35652 (Sept. 3, 1985). As part of this recalibration process, the Secretary responded to a comment on the use of transfers in the recalibration process as follows:
> *Comment:* A commenter was concerned that, by including transfer cases in the calculation of the relative weights, we might be inappropriately reducing the relative weights of DRGs in which there are significant proportions of transfer cases.
> *Response:* This commenter assumes that the charges for transfer cases are lower than charges for the average case in a DRG. Our data show that this assumption is not correct for many DRGs. To test the effect of including transfers in the calculation of the relative weights, we computed mean charges for each DRG, both with and without the transfer cases. We then conducted statistical tests to determine whether these two means differed significantly at the .05 confidence level (that is, there is only a .05 probability that the observed difference in the means would occur if the two sets of cases came from the same underlying population). The results indicate that transfers have a statistically significant effect on the mean charges of only 16 DRGs. For 13 of the 16 DRGs, inclusion of transfer cases tends to ***increase*** the mean charges. However, for three DRGs, the mean charges are reduced by the inclusion of the transfer cases.

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 48

    c.   BNAs made to the standardized amount designated for urban hospitals and the one designated for rural hospitals when certain urban hospitals were deemed to be urban effective with discharges occurring on or after October 1, 1988.  53 Fed. Reg. 38476, 38499-500, 38539 (Sept. 30, 1988) (implementing OBRA 87, Pub. L. 100-203, § 4005).[81]

    d.   Effective for FFY 1995, eliminating the initial two standardized amounts (one for urban hospital and another for rural hospitals)[82] and replacing them with one single standardized amount as specified at 42 C.F.R. § 1395ww(d)(3)(C)(iii).[83]

    e.   Budget neutrality provision at 42 U.S.C. § 1395ww(d)(3)(A)(vi) that allows Secretary to adjust standardized amount to eliminate the effect of "changes in coding or classification of discharges that do not reflect real changes in case mix."[84]

---

> Since the inclusion of transfer cases raises the mean charges for some DRGs and lowers them for others, and because these effects are limited to such a small number of DRGs, we decided not to revise the method we used to recalibrate the relative weights. During FY 1986, we will be studying the entire issue of transfers and the appropriate payment for these cases. This study may reveal other ways of handling transfer cases in future recalibrations.

*Id.* at 35655-56.

[81] *See also* 56 Fed. Reg. 43358, 43373 (Aug. 30, 1991) (stating "Consistent with the prospective payment system for operating costs, the September 1, 1987 capital final rule provided for separate standardized amounts for hospitals located in urban and rural areas.  Subsequently, the Omnibus Budget Reconciliation Act of 1987 (Pub. L. 100-203) provided for a higher update factor for hospitals located in large urban areas than in other urban areas and thereby established three standardized amounts under the prospective payment system for operating costs.  Large urban areas are defined as those metropolitan statistical areas (MSAs) with a population of more than 1 million (or New England County metropolitan statistical areas (NECMAs) with a population of more than 970,000).  Beginning with discharges on or after April 1,1988 and continuing to FY 1995, the Congress has also established higher update factors for rural hospitals than for urban hospitals.  The differential updates have had the effect of substantially reducing the differential between the rural and other urban standardized amounts. Section 4002(c) of Public Law 101-508 provides for the elimination of the separate standardized amounts for rural and other urban hospitals in FY 1995 by equating the rural standardized amount to the other urban standardized amount.  The separate standardized amount for large urban hospitals would continue.  Currently, the large urban standardized amount under the prospective payment system for operating costs is 1.6 percent higher than the standardized amount for hospitals located in other urban areas.").

[82] *See* 42 U.S.C. §§ 1395ww(d)(2)(D), 1395ww(d)(3)(A); *supra* note 24.

[83] Omnibus Reconciliation Act of 1990, Pub. L. 101-508, § 4002(c), 104 Stat. 1388, 1388-33 – 1388-35 (1990).

[84] For example, the Secretary included the following discussion in the preamble to the FFY 1986 IPPS Final Rule:

> As stated above, we have already built case-mix increases into the cost-per-case assumptions used in deriving budget neutral prospective payment rates for FY 1984 and FY 1985.
> Now that there is no further requirement for budget neutrality, we agree that real case-mix increases should be explicitly recognized.  In fact, to the extent that case mix continues to increase, hospitals realize the benefit of such increase in increased payments for the current year. This is because we do not recoup payments already made, but only adjust the rates to avoid compounding such overpayments in the future. Thus, FY 1986 prospective payment rates were based on FY 1985 rates, corrected to eliminate all increases in case mix through FY 1985 (since FY 1985 was a budget neutral year).  However, we now have data that indicate that case mix has increased an additional 2.6 percent.  Hospitals have been realizing the benefit of that increase through increased payments.  Our update factor will be adjusted so as to not pass through in the FY 1987 rates 2.0 percentage points of the increase in case mix.  However, the 0.6 percentage points that we estimate to reflect a real increase in case mix will be added to the update factor for FY 1987.

51 Fed. Reg. 31505-06.

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 49

     f.   The discretion of the Secretary in 42 U.S.C. § 1395ww(d)(3)(I)(i) to "provide by regulation for such other exceptions and adjustments to such payments amounts under this subsection as the Secretary deems appropriate."

     g.   The subsequent amendments that Congress made in 1994[85] and 1997[86] to add subparagraphs (I) and (J) to 42 U.S.C. § 1395ww(d)(5) to recognize and incorporate the concept of transfers into IPPS *in a budget neutral manner*.  The Secretary made adjustments to the standardized amounts in order to implement the permanent incorporation of transfers into IPPS.[87]

To illustrate the complex nature of these issues, the Board Majority points to the Secretary's exercise of her discretion under 42 U.S.C. § 1395ww(d)(3)(I)(i) on making recommendations to Congress on whether to make adjustments to the "applicable percentage increases" or update factor for FFY 1986 as provided in 42 U.S.C. § 1395ww(b)(3)(B)(i).  In the September 1985 Final Rule,[88] the Secretary asserted that the FFY 1985 Federal rates were "overstated" and cited to the GAO's 1985 report entitled "Report to the Congress of the United States:  Use of Unaudited Hospital Cost Data Resulted in Overstatement of Medicare Prospective Payment System Rates" and, pursuant to 42 U.S.C. § 1395ww(e)(4), made a recommendation to Congress that it not provide any increase to FFY 1985 standardized amounts but rather freeze the FFY 1986 amounts at the FFY 1985 levels (*i.e.*, recommended an update factor of 0 percent for FFY 1986).[89]  The following excerpts from that rulemaking describe how the Secretary determined that the FFY 1985 standardized amounts were overstated when reviewing whether to recommend that Congress adjust the update factor for the FFY 1986 standardized amounts:

> Since the standardized amounts for FY 1985 are used as the basis for the determination of rates for later years, the level of the FY 1985 standardized amounts must be corrected for any experience that developed since they were published. *We believe that it is necessary, **each year**, to review the appropriateness of the level of the previous*

---

[85] Social Security Act Amendments of 1994, § 109, Pub. L. 103-432, 108 Stat. 4398, 4408 (1994) placed the then-existing language of 42 U.S.C. § 1395ww(d)(5)(I) into clause (i) and added the following clause (ii): "(ii) In making adjustments under clause (i) for transfer cases (as defined by the Secretary) in a fiscal year, the Secretary may make adjustments to each of the average standardized amounts determined under paragraph (3) to assure that the aggregate payments made under this subsection for such fiscal year are not greater than or lesser than those that would have otherwise been made in such fiscal year."

[86] Balanced Budget Act of 1997, Pub. L. 105-33, § 4407, 111 Stat. 251, 401 (1997), further revised 42 U.S.C. § 1395ww(d)(5)(I) and added § 1395ww(d)(5)(J).

[87] *See* 60 Fed. Reg. 45778, 45854 (Sept. 1, 1995) ("[W]e are revising our payment methodology for transfer cases, so that we will pay double the per diem amount for the first day of a transfer case, and the per diem amount for each day after the first, up to the full DRG amount.  For the data that we analyzed, this would result in additional payments for transfer cases of $159 million.  *To implement this change in a budget neutral manner*, we adjusted the standardized amounts by applying a budget neutrality adjustment of 0.997583 in the proposed rule.").

[88] 50 Fed. Reg. 35646, 35704 (Sept. 3, 1985).

[89] U.S. Gov't Accountability Office, GAO/HRD-85-74, Use of Unaudited Hospital Cost Data Resulted in Overstatement of Medicare's Prospective Payment System Rates (1985).

Exhibit 1

*year's prospective payment rates for providing reasonable payment for inpatient hospital services furnished to beneficiaries*. Further, we think this review must include assessment of whether the previous year's prospective payment rates have established adequate incentives for the efficient and effective delivery of needed care.

In addition to this general consideration, *the FY 1985 adjusted average standardized amounts* (***Federal rates***) *were required by law **to be adjusted to achieve budget neutrality***; that is, to ensure that aggregate payments for the operating costs of inpatient hospital services would be *neither more **nor** less than* we estimated would have been paid under prior legislation for the costs of the same services. (The technical explanation of how this adjustment was made was published in the August 31, 1984 final rule (49 FR 34791).) *These budget neutrality-adjusted rates for FY 1985 are then to be used as the basis for the determination of rates for later years*.

*Our FY 1985 budget neutrality adjustment factors were based on data and assumptions that resulted in standardized amounts that were **higher** than necessary to achieve budget neutrality*. Therefore, *we have updated the FY 1985 standardized amounts using a factor that takes into account the **overstatement** of the FY 1985 amounts to ensure that accuracy of the FY 1986 standardized amounts*. To this end, we have identified several factors, ***discussed in section II.A.3.c.***, below, that contributed to the overstatement of the FY 1985 standardized amounts. *We have determined an appropriate percent value for each of them, and have combined them into **a proposed composite correction factor** for FY 1986 that equals –7.5 percent.*

In addition, we have developed factors representing productivity, technological advances, and the elimination of ineffective practice patterns, which are necessary to ensure the cost-effective delivery of care. Each of these factors interacts with the others, to some extent, and has an impact on the quality of care. Making conservative assumptions, we have determined an appropriate percent value for each of these factors, taking into consideration their potential effect on quality. **We have combined these values into a composite policy target adjustment factor**, **as discussed in section III.3.e., below**. For FY 1986, this factor equals —1.5 percent.

The Secretary is required under section 1886(e)(4) of the Act to make those adjustments in establishing the update factor that are ". . . necessary for the efficient and effective delivery of medically appropriate and necessary care of high quality." *Establishing FY 1986 prospective payment rates based on FY 1985 rates **that have***

Exhibit 1

**been demonstrated to be overstated**, *clearly would not comport with the statutory requirement that the rates represent payment for efficiently delivered care*.

Since the forecasted hospital market basket increase for FY 1986 is +4.27 percent, and the adjustment for Part B costs and FICA taxes is +.31 percent, it is clear that there is a potential justification of a –4.42 percent decrease in the FY 1986 standardized amounts as compared to those for FY 1985 as described below:

|  | Percent |
|---|---|
| Forecasted market basket increase.. | +4.27 |
| Part B costs and FICA taxes............ | +.31 |
| Composite correction factor............. | –7.5 |
| Composite policy target adjustment factor...................................... | –1.5 |

However, for the reasons discussed in section II.A.3.f., below, we have decided that such a decrease is undesirable. Therefore, we are maintaining the FY 1986 standardized amounts at the same average level as FY 1985, in effect applying a zero percent update factor.[90]

****

(3) *Additional causes for the overstatement of FY 1985 Federal rates.* In addition to the factors above, which we believe we must correct, **other considerations also contributed significantly to the overstatement of the FY 1985 standardized amounts**.

When we set the standardized amounts for FY 1985, we made assumptions on hospital cost per case increases in order to estimate, for purposes of budget neutrality, the payments that would have been made had prior payment rules continued in effect. These assumed rates of increase in cost per case were 10.9 percent for 1983, 9.8 percent for 1984, and 9.8 percent for 1985. These assumptions were significantly higher than the actuarial estimates. The actuarially estimated rates of increase in cost per case (which ignore any effects of the prospective payment system such as shorter lengths of stay) are 9.8 percent for 1983, 8.1 percent for 1984, and 8.5 percent for 1985. After application of the revised market basket, discussed previously, use of these actuarial estimates would reduce the standardized amounts by an additional 1.2 percent.

---

[90] 50 Fed. Reg. at 35695 (bold, italics, and underline emphasis added).

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 52

**For FY 1985, we also used 1981 unaudited, as-submitted cost reports (to get recent data as quickly as possible) to set the Federal rates.** The hospital specific rates were set using later (1982 or 1983) cost reports that were fully audited. The audits adjusted the total cost for these reports downward by $2.2 billion, of which Medicare realized about $900 million in inpatient recoveries. **Since the cost data used to set the Federal rates do not reflect audit recoveries, it is likely that they are overstated by a similar amount**. We do not know precisely what proportion of this amount applies to capital-related costs and other costs that would not affect the Federal rates. However, approximately 90 percent of hospitals" total inpatient costs are operating costs, and if only 40 percent of the $900 million in audit recoveries is related to Federal payments for inpatient operating costs, there would have been, conservatively estimated, at least a one percent overstatement of allowable costs incorporated into the cost data to determine the FY 1985 standardized amounts.

In addition, the General Accounting Office (GAO) recently conducted a study to evaluate the adequacy of the Standardized amounts. In its report to Congress dated July 18, 1985 (GAO/HRD-85-74), **GAO reported findings that the standardized amounts, as originally calculated, are overstated by as much as 4.3 percent because they were based on unaudited cost data and include elements of capital costs.** GAO recommended that the rates be adjusted accordingly.

We believe that these causes for the overstatement of the standardized amounts are related to our own procedures and decisions. Thus, they are unlike both the market basket index, which is a technical measure of input prices, and the increases in case-mix, which would not have been passed through beyond the extent to which they affected the estimates of cost per case.  Further, as discussed below, even without making these corrections, we could justify a negative update factor for FY 1986, although we are not establishing one. **Since we have decided to set FY 1986 standardized amounts at the same level as those for FY 1985, making corrections now to reflect the cost per case assumptions and the audit data would have no practical effect.  Therefore, we have decided <u>at this time not</u> to correct the standardized amounts for these factors.**

We received no comments on this issue.

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 53

> **(4) *Composite Correction Factor.*** We are adjusting the standardized amounts as follows to take into consideration the overstatement of the prior years, amounts:

|  | *Percent* |
|---|---|
| Case mix..................................... ......... | −6.3 |
| Market basket........................................ | −1.2 |
| Composite correction factor...... | −7.5[91] |

Congress did immediately act on the Secretary's September 3, 1985 recommendation because, shortly thereafter on September 30, 1985, it enacted § 5(a) of the Emergency Extension Act of 1985 ("EEA-85") to maintain existing IPPS payment rates for FFY 1986 at the FFY 1985 Rates (*i.e.*, provide a 0 percent update factor) until November 14, 1985 as specified in EEA-85 § 5(c).[92] Congress subsequently modified this freeze on several different occasions as explained in the interim final rule published on May 6, 1986:

> - Pub. L. 99-155, enacted December 14, 1985, extended the [EEA-85] delay through December 14, 1985.
>
> - Pub. L. 99-181, enacted December 13, 1985, extended the [EEA-85] delay through December 18, 1985.
>
> - Pub. L. 99-189, enacted December 18, 1985, extended the [EEA-85] delay through December 19, 1985.
>
> - Pub. L. 99-201 enacted December 23, 1985, extended the [EEA-85] delay through March 14, 1986.[93]

Second, on April 7, 1986, Congress further revised EEA-85 § 5(c) by extending the 0 percent update factor through April 30, 1986 and then specified that, for discharges on or after May 1, 1986, the update factor would be ½ of a percentage point.[94]  As previously discussed above in the decision at Section B.3, in the final rule published on May 6, 1986, the Secretary confirmed that "*the adjusted standardized amounts that were published in the September 3,1985 final rule* (which reflected a zero percent update) are updated by one-half of one percent effective for discharges on or after May 1,1986"[95] and these FFY 1986 adjusted standardized rates are based on the FFY 1985 budget neutrality-adjusted rates.

---

[91] *Id.* at 35703-04 (bold and underline emphasis added).
[92] Pub. L. 99-107, § 5(a), 99 Stat. 479, 479 (1985).  In July 1984, Congress had *already* reduced the 1 percent update factor planned for FFY 1986 to ¼ of a percentage point.  Deficit Reduction Act of 1984, Pub. L. 98-369, § 2310(a), 98 Stat. 494, 1075 (1984).  As part of the Emergency Extension Act of 1985, Congress further reduced the update factor for FFY 1986, presumably in response to the Secretary's recommendation.
[93] 51 Fed. Reg. 16772, 16772 (May 6, 1986).
[94] *See id.* at 16773.  *See also* Medicare and Medicaid Budget Reconciliation Amendments of 1985, Pub. L. 99-272, § 9101(a), 100 Stat. 151, 153 (1986).
[95] 51 Fed. Reg. at 16773.

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 54

The examples highlight concerns about how certain future actions and decisions by the Secretary and Congress build upon prior decisions.  Here, the Secretary's recommendation to Congress regard the FFY 1986 update factor were based on its analysis of the FFY 1984 and 1985 standardized amounts that had already been adjusted for budget neutrality.  To the extent the 1984 standardized amounts had been *further* adjusted (*as **now** proposed by the Providers*), it could have potentially impacted the Secretary's recommendation to Congress for the FFY 1986 update factor as well as Congress' subsequent revisions to the updated factor.  Accordingly, this highlights how revisiting and otherwise adjusting the FY 1984 standardized amounts can have ripple effects with the update factor and other adjustments that were made for subsequent years *based on analysis of the prior year(s) and other information.*

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 55

**APPENDIX C**
**Additional Excerpts from FFY 1985 IPPS Final Rule**
**Affirming Application of FFY 1985 budget-neutrality-adjusted rates to**
**FFY 1986 and subsequent years.**

In its decision, the Board Majority has noted that the Secretary confirmed in the preamble of the FFY 1986 IPPS Final Rule that the FFY budget neutrality-adjusted rates were used in determining the rates for FFY 1986 and would similarly be part of subsequent FFYs rates. The following excerpts from the preambles to IPPS final rules provide additional contexts in which the Secretary confirmed that the FFY 1985 budget neutrality-adjusted rates were part of the rate for later FFYs and illustrate how embedded the FFY 1985 budget neutrality-adjusted rates are in the rates used for FFY 1986 and subsequent years. Thus, *regardless of how the Providers contend the Medicare statute should be interpreted relative to the 1985 BNA*, it is clear that the Secretary herself interpreted those provisions as requiring the application of the FFY 1985 budget neutrality-adjusted rates to later years; and that the FFY 1985 budget neutrality-adjusted rates are the basis for the rates used in FFY 1986 forward through to the years at issue.

1. In the preamble to the FFY 1986 IPPS Final Rule, the Secretary recognizes that the FFY 1985 BNA accounted for the removal of nonphysician anesthetist costs from the base rates and no further adjustments were needed relative to those costs since the FFY 1985 budget neutrality-adjusted rates were used in determining the FY 1986 rates and would similarly be used for the 1987 rates:

   > c. *Nonphysician anesthetist costs*. In the August 31, 1984 final rule, we implemented section 2312 of Pub. L. 98-369, which provided that hospital costs for the services of nonphysician anesthetists will be paid in full as a reasonable cost pass-through for cost reporting periods beginning before October 1, 1987. We did not directly reduce the FY 1985 Federal rates to exclude the estimated costs of these services, **because any required adjustment would be incorporated in the budget neutrality adjustment factors applied to the national and regional standardized amounts.** (See 49 FR 34794; August 31, 1984). <u>Since the FY 1986 standardized amounts are derived from an update of the FY 1985 amounts, which were adjusted for budget neutrality, the rates will automatically include the appropriate adjustment</u>. We are not making further adjustments to the Federal rates for this factor for either FY 1986 or FY 1987.[96]

---

[96] 50 Fed. Reg. at 35708 (Italics emphasis in original and bold and underline emphasis added). The Board Majority notes that the FFY 1985 IPPS Final Rule explained how the FFY 1985 BNA accounted for Anesthetists services:
> *Anesthetists' Services*. Under section 2312 of Pub. L. 98-369, the costs to the hospital of the services of nonphysician anesthetists will be reimbursed in full by Medicare on a reasonable cost basis. In order to ensure that these services will be paid for only once, we must remove their costs from the prospective payment rates.

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 56

2.  In the preamble to the FFY 1987 IPPS Final Rule, the Secretary explains how her BNAs for FFYs 1984 and 1985 had "already built case-mix increases into the cost-per-case assumptions used in deriving the budget neutral prospective rates for FY 1984 and FY 1985" and confirms that "FY 1986 prospective payment rates were based on FY 1985 rates, corrected to eliminate all increases in case mix through FY 1985 (since FY 1985 was a budget neutral year)":

> *Comment*: Several commenters stated that we did not consider real case mix increases in the 1983 to 1984 period, and that we finally are considering real case mix increases for the first time.
>
> *Response*: FY 1984 and FY 1985 were years subject to the requirements for budget neutrality. As required under section 1886(e)(1) of the Act, payments under the prospective payment system were to be equal to what would have been paid under rate-of-increase and peer group limits on reasonable costs under prior law (section 1886(b) of the Act) as if the prospective payment system had never been implemented.  Under the rate-of-increase limits and peer group limits, as long as a hospital's cost was lower than that hospital's limits, we paid that cost, regardless of whether real case mix increased or decreased, and regardless of the effect of actual case mix on the cost level for that hospital. . . .  Increases in real case mix were built into the cost per case increase assumptions we used to model the rate-of-increase limits. These assumptions took into account estimates of the impact of the rate-of-increase limits and the peer group limits.  **Consequently, we considered increases in real case mix in FYs 1984 and 1985.**  Moreover, even these assumed increases in cost per case proved to be overstated as we received more recent data against which to evaluate our estimates. To have passed through updated prospective payment case-mix increases for FY 1984 and FY 1985 would have been improper because they would increase program payments over the level that would have been paid under the section 1886(b) limits. **As stated above, we have already built case-mix increases into the cost-per-case assumptions used in deriving budget neutral prospective payment rates for FY 1984 and FY 1985.**

---

For cost reporting periods beginning in FY 1985, we have reduced the adjusted standardized amounts to reflect the removal of these costs **by means of the budget neutrality adjustment methodology**. Our method for doing this is explained in section V.D. of this Addendum. We estimate that FY 1985 payments for anesthetists' services will be about $160 million, or 0.5 percent of Medicare operating costs for hospital accounting years beginning in FY 1985.

Exhibit 1

Notice of Dismissal for Cases 18-1646G *et al.*
502 Hall Render Standardized Amount Group Cases
Page 57

Now that there is no further requirement for budget neutrality, we agree that real case-mix increases should be explicitly recognized. In fact, to the extent that case mix continues to increase, hospitals realize the benefit of such increase in increased payments for the current year. This is because we do not recoup payments already made, but only adjust the rates to avoid compounding such overpayments in the future. **Thus, FY 1986 prospective payment rates were based on FY 1985 rates, corrected to eliminate all increases in case mix through FY 1985 (since FY 1985 was a budget neutral year).**

3.  In the preamble to the FFY 1988 IPPS Final Rule, the Secretary again recognizes the prior FFY 1985 BNA to the standardized amounts had already taken into account the removal of nonphysician anesthetist costs and the *FFY 1985 budget neutrality-adjusted rates **were reflected in the FFY 1986, 1987, and 1988 rates**.*

> c. *Nonphysician Anesthetist Costs.*  Section 1886(d)(5)(E) of the Act provides that hospital costs for the services of nonphysician anesthetists are paid in full as a reasonable cost pass-through. Under section 2312(c) of Pub. L. 98-369, this pass-through was made effective for cost reporting periods beginning on or after October 1,1984, and before October 1,1987. Section 9320(a) of Pub. L. 99-509 extended the period of applicability of this pass-through so that services will continue to be paid under reasonable cost for any cost reporting periods (or parts of cost reporting periods) ending before January 1,1989 and struck subsection (E) effective on that date.
>
> In the September 3, 1985 final rule, we noted that to the extent an adjustment was warranted to reflect the removal of these costs from the prospective payment rates for FY 1985, it was incorporated in the overall **budget neutrality** adjustment (50 FR 35708). Therefore, **because this adjustment has already been built into the FY 1985 base from which the FY 1986, FY 1987, and proposed FY 1988 rates are derived,** we did not propose to make further adjustments to the average standardized amounts for FY 1988.[97]

---

[97] 52 Fed. Reg. 33034, 33064 (Sept. 1, 1987) (emphasis added).

Exhibit 1